[No. 19392.   Department One.   October 9, 1925.]

LAMONT, CORLISS & COMPANY, *Petitioner,* v. J. GRANT
HINKLE, *as Secretary of State, Respondent.*[1]

CORPORATIONS (20)—CONSTITUTIONAL LAW (134)—AMENDMENT OF
ARTICLES—INCREASE OF CAPITAL STOCK—PAYMENT OF FEES—DUE PRO-
CESS OF LAW. Rem. 1923, Sup., §§ 3836 and 3837, requiring foreign
corporations to pay an annual license tax, graded in proportion to
the amount of its capital stock, is not unconstitutional as depriving
such corporations of property without due process of law; and there-
under, a foreign corporation, increasing the amount of its capital
stock by amended articles, must pay the increased tax prescribed by
the act, upon filing its amended articles.

Application filed in the supreme court June 9, 1925,
for a writ of mandamus to compel the secretary of state
to file amended articles increasing the capital stock of
a foreign corporation.   Denied.

*Groff & Davis,* for petitioner.

*The Attorney General* and *R. G. Sharpe, Assistant,*
for respondent.

PARKER, J.—This is an original mandamus proceed-
ing in this court wherein the petitioner, Lamont, Cor-
liss & Company, a New York corporation, seeks a writ
of mandate from this court directing the respondent
secretary of state to accept for filing and file in his of-
fice a copy of its amended articles of incorporation,
duly certified by the secretary of state of the state of
New York, evidencing an increase of its authorized
capital stock from $200,000 to $1,750,000, the petitioner
having heretofore been duly authorized to do business
in this state as a foreign corporation capitalized at
$200,000.   The petitioner insists that it having tendered
to the secretary a filing fee of $10 and such duly certi-
fied amended articles, it is entitled to have the same

[1]Reported in 239 Pac. 840.

filed as evidencing its capital increase, and thereby be fully authorized to do business in this state as a corporation capitalized at $1,750,000; while the secretary insists that the lawful filing fee therefor is a much larger sum which the petitioner has refused to pay, and for that reason the secretary has refused to accept and file the tendered certified amended articles.

The case has been submitted to us upon the facts alleged in the petition, which, in so far as necessary to be here noticed, may be summarized as follows: The petitioner is a New York corporation, originally incorporated under the laws of that state in the year 1901. As originally incorporated its capital stock was $130,-000, which was later duly increased under the laws of the state of New York to $200,000. Thereafter, while the petitioner's capital stock remained at $200,000, it caused to be filed in the office of the secretary of this state copies of its articles of incorporation and amendments thereto, duly certified by the secretary of state of New York, and thereby was duly admitted to do business in this state as a foreign corporation capitalized at $200,000. Thereafter, pursuant to the laws of New York, the petitioner's authorized capital stock was, by appropriate amended articles, duly increased under the laws of that state to $1,750,000. It is the New York record of such increase, duly certified by the secretary of state of New York, that the petitioner on March 17 of this year tendered and now seeks to have filed in the office of the secretary of state of this state to the end that it be thereby fully authorized to do business in this state as a foreign corporation capitalized at $1,-750,000. Of its whole capitalization, not more than $500 in value thereof, consisting principally of office furniture, is employed in, or situated within, or engaged in doing business within this state. No facts are alleged in the petition and no claim is here made that the peti-

tioner is to any extent engaged in interstate commerce or any Federal government employment or agency entitling it to do business in the state of Washington against the will of the state. Indeed, we are not advised by the record before us as to the nature of the petitioner's business. Neither its original nor amended articles, nor any other record telling the nature of its business, is set out in the petition or otherwise disclosed by this record other than as shown by the very general allegations of the petition above summarized.

By reference to sections of Rem. Comp. Stat., relating to the organization of corporations and their doing of business in this state it appears that, prior to the act of 1923, both domestic and foreign corporations were required to pay filing fees as follows:

"Sec. 3836.   Every corporation incorporated under the laws of this state, or of any state or territory in the United States or of any foreign state or county, required by law to file articles of incorporation in the office of the secretary of state, shall pay to the secretary of state a filing fee of twenty-five dollars."

"Sec. 3837.   Every corporation, foreign or domestic, desiring to file in the office of the secretary of state articles amendatory or supplemental, or certificates of increase or decrease of capital stock, shall pay to the secretary of state a fee of ten dollars."

By ch. 144, Laws of 1923, p. 462, these sections were amended to read as follows:

"Sec. 3836.   Every corporation incorporated under the laws of this state, or of any state or territory in the United States or of any foreign state or county, required by law to file articles of incorporation in the office of the secretary of state, shall pay to the secretary of state a filing fee in proportion to its authorized capital stock as follows:

   "Capital not exceeding $50,000.00, fee $25.00;

   "Capital of more than $50,000, and less than $100,-000.00, fee $40.00;

"Capital of $100,000.00, or more, and less than $150,-000.00, fee $75.00;

"Capital of $150,000.00, or more, and less than $200,-000.00, fee $100.00;

"Capital of $200,000.00, or more, and less than $300,-000.00, fee $150.00;

"Capital of $300,000.00, or more, and less than $400,-000.00, fee $200.00;

"Capital of $400,000.00, or more, and less than $500,-000.00, fee $250.00;

"Capital of $500,000.00, or more, and less than $1,-000,000.00, fee $500.00;

"Capital of $1,000,000.00, or more, and less than $2,-000,000.00, fee $750.00; and $10.00 additional for each $1,000,000.00, or major fraction thereof, of capital stock in excess of $2,000,000.00." [Rem. 1923 Sup., § 3836.]

"Sec. 3837.   Every corporation, foreign or domestic, desiring to file in the office of the secretary of state articles amendatory or supplemental articles increasing its capital stock, or certificates of increase of capital stock shall pay to the secretary of state the fees prescribed in the preceding section for the increase in the capital stock of the corporation, less the amount already paid for filing the original articles of incorporation, or original articles and amendatory or supplemental articles, or certificate of increase, and every such corporation desiring to file amendatory or supplemental articles decreasing, or certificate of decrease of capital stock, shall pay to the secretary of state a filing fee of $25.00. . . ." [Rem. 1923 Sup., § 3837.]

The petitioner, by the concluding language of its petition, invokes its claimed constitutional rights as follows:

"Your petitioner alleges and avers that the provisions of section 3837 of Remington's Compiled Statutes, as amended by section 2 of Chapter 144 of the laws of 1923, are unconstitutional and void as applied to your petitioner, in that the fees as therein prescribed to be paid by your petitioner are based upon the entire authorized capital stock of your petitioner and not upon that portion of capital stock represented by capital employed by your petitioner in doing busi-

ness within the state of Washington, and that such provisions constitute a taxation upon the property of your petitioner without the jurisdiction of the state of Washington and deprive your petitioner of its property without due process of law."

It seems to us that the law as announced by the supreme court of the United States in *Horn Silver Mining Co. v. State,* 143 U. S. 305, is decisive against the contentions here made in behalf of the petitioner. In that case there was drawn in question a tax upon the "corporate franchise or business" of certain corporations of the class to which the mining company belonged, the tax to be computed by a certain percentage upon dividends paid upon stock, or where there were no dividends, then according to a certain percentage upon the actual value of the stock during each year, the tax being so chargeable against both foreign and domestic corporations. The mining company being a Utah corporation doing business in New York, suit was brought against it in the New York courts in the name of the state to recover the tax for certain years computed upon the basis prescribed by the New York law. The business of the mining company carried on in New York constituted but a small portion of its entire business. The mining company was not engaged in interstate commerce nor serving the Federal government in any employment or agency capacity. Holding that the tax so imposed under the New York law did not violate any of the mining company's constitutional rights, Justice Field, speaking for the court, said:

"The granting of the rights and privileges which constitute the franchises of a corporation being a matter resting entirely within the control of the legislature, to be exercised in its good pleasure, it may be accompanied with any such conditions as the legislature may deem most suitable to the public interests and policy.

It may impose as a condition of the grant, as well as, also, of its continued exercise, the payment of a specific sum to the State each year, or a portion of the profits or gross receipts of the corporation, and may prescribe such mode in which the sum shall be ascertained as may be deemed convenient and just. There is no constitutional inhibition against the legislature adopting any mode to arrive at the sum which it will exact as a condition of the creation of the corporation or of its continued existence. There can be, therefore, no possible objection to the validity of the tax prescribed by the statute of New York, so far as it relates to its own corporations. Nor can there be any greater objection to a similar tax upon a foreign corporation doing business by its permission within the State. As to a foreign corporation—and all corporations in States other than the State of its creation are deemed to be foreign corporations—it can claim a right to do business in another State, to any extent, only subject to the conditions imposed by its laws. . .

"This doctrine has been so frequently declared by this court that it must be deemed no longer a matter of discussion, if any question can ever be considered at rest.

"Only two exceptions or qualifications have been attached to it in all the numerous adjudications in which the subject has been considered, since the judgment of this court was announced more than half a century ago in *Bank of Augusta v. Earle*, 13 Pet. 519. One of these qualifications is that the State cannot exclude from its limits a corporation engaged in interstate or foreign commerce, established by the decision in *Pensacola Telegraph Co. v. Western Union Telegraph Co.*, 96 U. S. 1, 12. The other limitation on the power of the State is, where the corporation is in the employ of the general government, an obvious exception, first stated, we think, by the late Mr. Justice Bradley in *Stockton v. Baltimore & New York Railroad*, 32 Fed. Rep. 9, 14. . .

"Having the absolute power of excluding the foreign corporation the State may, of course, impose such conditions upon permitting the corporation to do business

within its limits as it may judge expedient; and it may make the grant or privilege dependent upon the payment of a specific license tax, or a sum proportioned to the amount of its capital. No individual member of the corporation, or the corporation itself, can call in question the validity of any exaction which the State may require for the grant of its privileges. It does not lie in any foreign corporation to complain that it is subjected to the same law with the domestic corporation. The counsel for the appellant objects that the statute of New York is to be treated as a tax law, and not as a license to the corporation for permission to do business in the State. Conceding such to be the case we do not perceive how it in any respect affects the validity of the tax. However it may be regarded, it is the condition upon which a foreign corporation can do business in the State, and in doing such business it puts itself under the law of the State, however that may be characterized.''

See, also, *Baltic Mining Co. v. Commonwealth of Massachusetts*, 231 U. S. 68; *Kansas City, Ft. S. & M. R. Co. v. Secretary of State of Kansas*, 240 U. S. 227; *Kansas City, M. & B. R. Co. v. Stiles*, 242 U. S. 111. This last cited case was decided upon writ of error to the supreme court of Alabama. There was there drawn in question a tax against a domestic corporation (that is, a corporation treated as domestic for the purpose of that case, it being a consolidation of corporations under concurrent legislation of the states of Tennessee, Mississippi and Alabama), it being claimed by the railroad company that the charge of the tax, if enforced, amounted to the taking of its property without due process of law, in that it was a tax upon its property which was beyond the limits of the state. To show the exact nature of the tax and the manner of its computation we quote the statement of the United States supreme court with reference thereto, as follows:

''By this act it is provided that corporations organized under the laws of Alabama shall pay an annual

franchise tax as follows: where the paid-up capital stock does not exceed $50,000, one dollar per thousand of such paid-up capital stock; where paid-up capital stock is more than $50,000 and up to $1,000,000, one dollar per thousand on the first $50,000, and fifty cents for each thousand of the remainder; where paid-up capital stock is more than $1,000,000 and up to $5,000,-000, one dollar per thousand on the first $50,000, and fifty cents per thousand for the next $950,000, and twenty-five cents per thousand for the remainder; where the paid-up capital stock exceeds $5,000,000, one dollar per thousand on the first $50,000, fifty cents per thousand on the next $950,000, twenty-five cents per thousand on the next $4,000,000, and ten cents per thousand on the remainder; . . ."

That domestic corporation of Alabama was, under that law, taxed by computation upon all of its capital stock, regardless of the fact that a large portion of its capital was concededly employed outside the state. The court being of the view that the tax, under the circumstances shown, was not an undue burden upon interstate commerce, further considered the power of the state to levy the tax as a due process of law problem, and in holding that the law was not unconstitutional in violation of that constitutional guaranty, Justice Day, speaking for the court, said:

"It is urged that this tax is void because it undertakes to tax property beyond the jurisdiction of the State, and imposes a direct burden upon interstate commerce. Objections of this character were so recently discussed, and the previous cases in this court considered, in *Kansas City etc. Railway Co. v. Kansas,* 240 U. S. 227, that it would be superfluous to undertake extended discussion of the subject now. In that case, after a full review of the previous decisions in this court, it was held that each case must depend upon its own circumstances, and that while the State could not tax property beyond its borders, it might measure a tax within its authority by capital stock which in part rep-

resented property without the taxing power of the State. As to the objection based upon the due process clause of the Constitution, we think that principle controlling here. There is no attempt in this case to levy a property tax; a franchise tax within the authority of the State is in part measured by the capital stock representing property owned in other States."

The fact that the court was there considering the franchise taxing power of the state over its domestic corporations we think renders that decision no less controlling of the correct disposition of this case. As observed by Justice Field in the *Horn Silver Mining Co.,* case, *supra*: "As to a foreign corporation  . . . it can claim a right to do business in another state, to any extent, only subject to conditions imposed by its laws."

Counsel for the petitioner relies principally upon the following decisions: *Western Union Tel. Co. v. State,* 216 U. S. 1; *Pullman Co. v. State ex rel. Coleman,* 216 U. S. 56; *Ludwig v. Western Union Tel. Co.,* 216 U. S. 146; *Looney v. Crane Co.,* 245 U. S. 178; *International Paper Co. v. Commonwealth of Massachusetts,* 246 U. S. 135; *Cheney Brothers Co. v. Commonwealth of Massachusetts,* 246 U. S. 147; *Air-way Electric Appliance Corporation v. Day,* 266 U. S. 71; *Ozark Pipe Line Corporation v. Monier,* 266 U. S. 555; *Mulford Co. v. Cury,* 163 Cal. 276, 125 Pac. 236; *Hirschfeld v. McCullagh,* 64 Ore. 502, 127 Pac. 541, 130 Pac. 1131. In every one of these cases, except the latter, it seems plain that the controlling consideration inducing the court to hold the tax unconstitutional was the fact that it unduly burdened interstate commerce. In the last cited decision, the Oregon court does not make it plain as to whether or not there was there involved a question of a tax burden upon interstate commerce, but it seems apparent from the authorities cited in support of its

holding that its conclusion was rested wholly upon decisions of the Federal supreme court and of the California supreme court, all of which had to do with the question of a tax unduly burdening. interstate commerce. We think the Oregon decision is not persuasive in support of the due process of law contention here made on behalf of the petitioner.

Some contention is made rested upon the theory that our statute does not in terms prescribe that a corporation in the situation of the petitioner shall be excluded from doing business in the state upon failure to file its amended articles and pay the demanded fee; but that, we think, is of no consequence in our present inquiry. The fact remains that to accomplish what it here seeks, the petitioner is by our law required to pay the demanded fee. The petitioner is no more compelled to remain in the state and do business therein than it was compelled to come into the state and do business therein in the first instance. It is absolutely free to withdraw from the state and thus avoid every burden, not already incurred, which our laws place upon such corporations. Of course, if the petitioner has lawfully acquired property or contractual rights in this state, the due process of law guarantees of both the State and Federal constitutions will be amply efficacious to protect such rights whether asserted in the state's own courts or in the Federal courts, but these are considerations wholly foreign to our present inquiry.

We are of the opinion that this charge demanded by the secretary of state, computed in compliance with the provisions of §§ 3836 and 3837, Rem. Comp. Stat., as amended, is not a tax upon property outside of the state. Indeed, it might well be argued that it cannot be properly termed a tax. For present purposes, however, we hold that it is in no event more than a tax

upon the franchise privilege of a foreign corporation to do business in the state of Washington.

We conclude that the writ must be denied. It is so ordered.

TOLMAN, C. J., MITCHELL, and FULLERTON, JJ., concur.