## CUDAHY PACKING CO. v. HINKLE, Secretary of State of Washington, et al.

District Court, W. D. Washington, S. D. January 9, 1928.

No. 330.

1. **Commerce** ⊝⟲69—**That state tax imposed on foreign corporation, doing both interstate and intrastate business, is based on authorized capital stock, does not render it invalid, as burden on intrastate commerce, or tax on property beyond state's jurisdiction.**

That a tax imposed by a state on foreign corporations doing business therein, whether as a filing fee or an annual license tax, is measured by the authorized capital stock, does not render it invalid as a burden on interstate commerce, as applied to a corporation doing both interstate and intrastate business in the state, though much the greater part of it is interstate, nor as a tax on property beyond the jurisdiction of the state, if the tax is reasonable in amount and bears a reasonable relation to the amount of intrastate business done.

2. **Commerce** ⊝⟲69—**Constitutional law** ⊝⟲230 (1), 287—**Corporations** ⊝⟲637—**State statute imposing excise taxes on foreign corporations held not unconstitutional, as applied to corporation doing chiefly interstate business (Rem. Comp. Stat. Wash. §§ 3836, 3837 [amended by Laws Wash. Extra Sess. 1925, pp. 417, 418, §§ 1, 2]; § 3841 [amended by p. 418, § 3]; § 3842; §§ 3843, 3844 [amended by Laws 1923, p. 465, §§ 5, 6]; § 3853 [amended by Laws Extra Sess. 1925, p. 410, § 1]; §§ 3855, 3861).**

Rem. Comp. Stat. Wash. §§ 3836, 3837 (amended by Laws Wash. Extra Sess. 1925, pp. 417, 418, §§ 1, 2), section 3841 (amended by page 418, § 3); section 3842; sections 3843, 3844 (amended by Laws Wash. 1923, p. 465, §§ 5, 6); section 3853 (amended by Laws Extra Sess. Wash. 1925, p. 410, § 1), and sections 3855, 3861, requiring foreign corporations, as a condition of doing business in the state, to pay a fee for filing its articles of incorporation and any amendments thereto, and also an annual license tax, based on the corporation's authorized capital stock, but in no case exceeding $3,000, *held* not unconstitutional, as imposing a burden on interstate commerce, taxing property outside the state's jurisdiction or for other reason, as applied to a corporation doing both interstate and intrastate business in the state, though only a very small percentage of such business is intrastate, the greater part being in interstate and foreign commerce.

Bourquin, District Judge, dissenting.

In Equity. Suit by the Cudahy Packing Company against J. Grant Hinkle, Secretary of State of the state of Washington, and another. On motion to dismiss bill. Granted.

Palmer, Askren & Brethorst, of Seattle, Wash., for plaintiff.

John H. Dunbar, Atty. Gen., and L. B. Donley, Asst. Atty. Gen., for defendants.

Before the statutory court, composed of DIETRICH, Circuit Judge, and BOURQUIN and CUSHMAN, District Judges.

CUSHMAN, District Judge. Plaintiff, a corporation organized under the laws of the state of Maine, sues to enjoin the enforcement of the statutes of Washington requiring of corporations the payment of certain amounts of money, called in the acts, the one "a filing fee," and the other an "annual license fee." While plaintiff asks an interlocutory injunction, the matter is before the court upon motion to dismiss for want of equity and a failure of the bill to state facts entitling plaintiff to relief.

[1, 2] Complaint is made that these acts in question will deprive plaintiff of property without due process of law, and that they deny to plaintiff equal protection of the law, and violate the commerce clause (article 1, § 8, cl. 3) of the Constitution. It is alleged that plaintiff about 40 years ago engaged in business in the state of Washington, and has since been engaged therein, in interstate and foreign commerce; that it has been actively engaged in interstate commerce between each and every one of the states, and foreign commerce; that its principal office is in the city of Portland, Me., and that for the purpose of facilitating the transaction of its interstate business it has established agencies in all the states of the Union; that in Washington its only agency is a warehouse and sales office; that its only property in Washington is a lease of a warehouse and refrigeration system and fixtures therein, which is of a total value of about $40,000; that none of its traveling salesmen take orders for goods, save such as plaintiff ships into the state direct to the purchaser, or to its warehouse for the purpose of filling orders therefor; that its goods, warehoused in Washington, consist in most part of original and unbroken packages shipped into the state, and which are in large part reshipped and resold in original and unbroken packages in foreign commerce; that its intrastate and interstate commerce are so inextricably interwoven that they cannot be separated; that of its goods sold in the year ending in October, 1926, less than six-tenths of 1 per cent. of its entire business was done in the state of Washington (in round numbers), its goods sold for such year being in excess of $231,-000,000, and its Washington sales less than $1,325,000, and that more than one-half of its sales made in the state of Washington, and more than one-half of its merchandise handled in its branch office in Washington, were in interstate and foreign commerce; that less than four-tenths of 1 per cent. of its wages and salaries paid were earned in the state of Washington, such amount being a little less than $67,000.

Subsequent to 1919, plaintiff increased its capital stock from $35,000,000 to $45,000,000, of which authorized capital but $29,800,000 have been issued, and that all of its property does not exceed in value the amount of its capital stock issued. The supplemental articles evidencing such increase have not been filed with the secretary of state of Washington. Until the law of 1925, presently to be mentioned, no law of the state required the filing of a certificate of the increase or decrease of capital stock. Sections 1 and 2, chapter 149, of the Laws of the State of Washington, of the Extraordinary Session of 1925 (Laws of 1925, p. 417), amended sections 3836 and 3837 of Remington's Comp. Stat. to read:

Section 3836: "Every corporation incorporated under the laws of this state, or of any state or territory in the United States or of any foreign state or country, required by law to file articles of incorporation in the office of the secretary of state, shall pay to the secretary of state a filing fee in proportion to its authorized capital stock as follows: * * * Capital of $1,000,000.00, or more, and less than $2,000,000.00, fee $750.00; and $10.00 additional for each $1,000,000.00, or major fraction thereof, of capital stock in excess of $2,000,000.00: Provided, however, that the total filing fee for filing such articles of incorporation shall in no case exceed the sum of $3,000.00."

Section 3837: "Every corporation, foreign or domestic, desiring to file in the office of the secretary of state articles amendatory or supplemental articles increasing its capital stock, or certificates of increase of capital stock, shall pay to the secretary of state the fees prescribed in the preceding section for the total amount to which the capital stock of the corporation is so increased, less the amount already paid for filing the original articles of incorporation, or original articles and amendatory or supplemental articles, or certificates of increase, and every such corporation desiring to file amendatory or supplemental articles decreasing, or certificate of decrease of capital stock, shall pay to the secretary of state a filing fee of $25.00. For filing of other amendatory or supplemental articles, it shall pay a fee of $10.00: Provided, however, that the total amount paid by any corporation for filing its original articles of incorporation and all of its articles amendatory or supplemental articles increasing its capital stock or certificates of increase of capital stock, shall in the aggregate in no case exceed the sum of $3,000.00, plus $10.00 for each separate instrument filed in addition to its original articles of incorporation."

Chapter 147 of the Laws of the Extraordinary Session (Laws of 1925, p. 410) amended section 3853 of Remington's Comp. Stat. to read as follows:

"Such corporation shall cause to be filed * * * in the office of the secretary of state * * * a certified copy of each and all of its certificates of increase * * * of its capital stock."

Section 3855 provides:

"Any foreign corporation doing business in this state which shall fail to comply with the provisions of the two preceding sections, shall be subject to a penalty of two hundred and fifty dollars to be recovered in a civil action to be instituted by the Attorney General in the name of the state of Washington, upon his being furnished with a sworn statement of facts sufficient to justify such action."

Section 3861 provides:

"Any agent of any foreign corporation, conducting or carrying on business within the limits of this state, for and in the name of such corporation, contrary to any of the provisions of this chapter, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding two hundred dollars, or by imprisonment in the county jail for a term not exceeding three months, or by both such fine and imprisonment."

It is alleged that in 1926 plaintiff tendered the secretary of state for filing its certificate of increase of capital stock, together with a filing fee of $10, which was refused; the secretary demanding $580, less $35 in fees already paid. It is to be inferred that such demand was made under the foregoing provisions of law.

It is alleged that plaintiff has scores of traveling salesmen in the state of Washington and scores of other employés; that plaintiff, upon refusing to pay the filing fee provided for by chapter 149, was informed by the secretary of state and state treasurer of the state of Washington that, unless paid, they would request the Attorney General to institute a civil action against plaintiff under section 3855, supra, and to prosecute the agents of plaintiff carrying on business in the state, under section 3861, supra, and that such suits are about to be brought. It is alleged that the prosecution of such agents would ruin plaintiff's business in the state.

Section 3 of chapter 149 of the Laws of the Extraordinary Session of 1925 (Laws of 1925, p. 418) amended section 3841 of Remington's Comp. Stat. to read as follows:

"Every corporation incorporated under the laws of this state, and every foreign cor-

poration, having its articles of incorporation on file in the office of the secretary of state, shall, on or before the first day of July of each and every year, pay to the secretary of state, for the use of the state, the following license fees in proportion to its authorized capital stock as follows: * * * Capital in excess of $1,000,000.00 and up to and including $2,000,000.00, fee $150.00; and $10.00 for each $1,000,000.00 or fraction thereof of capital in excess of $2,000,000.00: Provided, however, that the total amount of such annual license fee shall in no case exceed $3,000.00. Every corporation failing to pay the said annual license fee, on or before the first day of July of any year, and desiring to pay the same thereafter, and before the first day of January next following, shall pay to the secretary of state, for the use of the state, in addition to the said license fee the following further fee, as a penalty for such failure, the sum of two dollars and fifty cents. * * *"

Section 3842, Remington's Comp. Stat., provides:

"No corporation shall be permitted to commence or maintain any suit, action or proceeding in any court of this state, without alleging and proving that it has paid its annual license fee last due. * * * The state board of tax commissioners may institute suits to enforce the payment of any license fee, due from any corporation under this or any other law. Failure upon the part of any corporation to pay its annual license fee for a period of one year, from and after the date when such payment first became due, shall be prima facie evidence of the insolvency of such corporation, and the fact of such insolvency may be shown by the state or by any private person or corporation. * * * It shall be the duty of the secretary of state to strike from the records of his office the names of all incorporations which have neglected for a period of two years to pay their annual license fees; and any corporation thereafter organized may take and shall have the exclusive right to use the corporate name of any corporation so stricken from the records. * * *"

Sections 3843 and 3844, as amended by chapter 144, §§ 5 and 6, of the Laws of Washington of 1923 (Laws of 1923, p. 465), provided for reinstating within three years of a corporation whose name has been stricken from his records by the secretary of state, and the conditions upon which it may be so reinstated.

Section 3843 provides:

"Every corporation whose name has been, or shall hereafter be, stricken from the records of the office of the secretary of state in pursuance of law for failure to pay its annual license fee for two years, is hereby authorized and permitted to apply to the secretary of state for reinstatement at any time within three years after its name has been stricken from the records of the office of the secretary of state. Any corporation stricken from the records and dissolved, as provided in this chapter, may at any time thereafter hold a meeting of stockholders, in the same manner as provided during its corporate existence, and pass such resolutions as may be necessary to close out its affairs and wind up the business of such corporation, and where such stricken and dissolved corporation has heretofore held such meetings of stockholders for the purpose of passing resolutions to wind up its affairs, such method of procedure is hereby validated and approved."

It is alleged that in 1927 plaintiff tendered to the secretary of state and state treasurer $15 and demanded a license to do business in the state of Washington, but that these officers, acting under chapter 149, supra, refused such license unless plaintiff pay for filing its certificate of increase a fee of $545 and the annual license fee of $580; that upon refusal of plaintiff to pay the annual license fee said state officers informed plaintiff, unless the same was paid, "the secretary of state would refuse to issue to the plaintiff any license permitting it to do business in the state of Washington for the year commencing July 1, 1927, and subsequent years, and would at the times fixed in the said laws above mentioned in this paragraph strike the plaintiff's name from the records of his office and enter thereon a notation of the plaintiff's dissolution as a corporation; and said officers further informed the plaintiff that it would be deprived on and after the 1st day of July, 1927, of the right to commence or maintain any action, suit, or proceeding in any court of the state of Washington, would be under a presumption of insolvency and under a constant threat and danger of receivership, and in danger of the loss of its name to some other corporation thereafter organized"; that said officers have notified the state board of tax commissioners, under the authority of the aforesaid section 3842, of the delinquency of plaintiff, and said board, through the Attorney General, is threatening suit to enforce the payment of such license fee; that the secretary of state has informed plaintiff that he is about to forfeit, on the books of his office, the right of plaintiff to

do business in the state, and to advise plaintiff's debtors and those having claims against it of that fact, and is about to issue a certificate to that effect to such persons, and that the Attorney General is threatening to institute suits against plaintiff for penalties for nonpayment of its license tax, to oust it from doing business in the state of Washington, and commence actions against all of plaintiff's agents in the state; that this will deprive plaintiff of its right to do interstate business and business incidental thereto in the state of Washington.

Plaintiff cites: Hanover Fire Ins. Co. v. Carr, 272 U. S. 494, 47 S. Ct. 179, 71 L. Ed. 372, 49 A. L. R. 713; Western Union Tel. Co. v. Kansas, 216 U. S. 1, 30 S. Ct. 190, 54 L. Ed. 355; Pullman Co. v. Kansas, 216 U. S. 56, 30 S. Ct. 232, 54 L. Ed. 378; Cheney Bros. Co. v. Massachusetts, 246 U. S. 147, 38 S. Ct. 295, 62 L. Ed. 632; Air-Way Electric Appliance Corp. v. Day, 266 U. S. 71, 45 S. Ct. 12, 69 L. Ed. 169; Alpha Portland Cement Co. v. Massachusetts, 268 U. S. 203, 45 S. Ct. 477, 69 L. Ed. 916, 44 A. L. R. 1219; Ludwig v. Western Union Tel. Co., 216 U. S. 146, 30 S. Ct. 280, 54 L. Ed. 423; Atchison, etc., Ry. Co. v. O'Connor, 223 U. S. 280, 32 S. Ct. 216, 56 L. Ed. 436, Ann. Cas. 1913C, 1050; International Text-Book Co. v. Pigg, 217 U. S. 91, 30 S. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103; Buck Stove & Range Co. v. Vickers, 226 U. S. 205, 33 S. Ct. 41, 57 L. Ed. 189; Baltic Mining Co. & White Dental Mfg. Co. v. Massachusetts, 231 U. S. 68, 34 S. Ct. 15, 58 L. Ed. 127; Looney v. Crane Co., 245 U. S. 178, 38 S. Ct. 85, 62 L. Ed. 230; International Paper Co. v. Massachusetts, 246 U. S. 135, 38 S. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617; Roberts & S. Co. v. Emmerson, 271 U. S. 50, 46 S. Ct. 375, 70 L. Ed. 827, 45 A. L. R. 1495; O'Gara Coal Co. v. Emmerson, 326 Ill. 18, 156 N. E. 814; Perkins Mfg. Co. v. Jordan (Cal. Sup.) 254 P. 551; Smith v. Reeves, 178 U. S. 436, 20 S. Ct. 919, 44 L. Ed. 1140; Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Western Union Tel. Co. v. Andrews, 216 U. S. 165, 30 S. Ct. 286, 54 L. Ed. 430; Meyer v. Wells Fargo Co., 223 U. S. 298, 32 S. Ct. 218, 56 L. Ed. 445; Barrett v. New York, 232 U. S. 14, 34 S. Ct. 203, 58 L. Ed. 483; Indiana Mfg. Co. v. Koene, 188 U. S. 681, 23 S. Ct. 452, 47 L. Ed. 651; State ex rel. Barber Co. v. Hinkle, 138 Wash. 72, 244 P. 398; Lamont, Corliss & Co. v. Hinkle, 136 Wash. 285, 239 P. 840; Bank of Kentucky v. Stone

(C. C.) 88 F. 383; Barrett v. New York, 232 U. S. 14, 34 S. Ct. 203, 58 L. Ed. 483.

In addition to a number of the foregoing, the defendant cites: Great Northern Ry. Co. v. Stevens County, 108 Wash. 238, 183 P. 65; Dows v. City of Chicago, 11 Wall. (78 U. S.) 108, 20 L. Ed. 65; Grand Chute v. Winegar, 15 Wall. (82 U. S.) 373, 21 L. Ed. 174; Hannewinkle v. Georgetown, 15 Wall. (82 U. S.) 547, 21 L. Ed. 231; State R. R. Tax Cases, 92 U. S. 575, 23 L. Ed. 663; Shelton v. Platt, 139 U. S. 591, 11 S. Ct. 646, 35 L. Ed. 273; Allen v. Pullman Car Co., 139 U. S. 658, 11 S. Ct. 682, 35 L. Ed. 303; Pittsburg, etc., Ry. Co. v. Board of Public Works, 172 U. S. 32, 19 S. Ct. 90, 43 L. Ed. 354; Arkansas Bldg. & Loan Ass'n v. Madden, 175 U. S. 269, 20 S. Ct. 119, 44 L. Ed. 159; Cruickshank v. Bidwell, 176 U. S. 73, 20 S. Ct. 280, 44 L. Ed. 377; Boise Artesian Water Co. v. Boise, 213 U. S. 276, 29 S. Ct. 426, 53 L. Ed. 796; Dalton Add. Machine Co. v. State Corp., etc., 236 U. S. 699, 35 S. Ct. 480, 59 L. Ed. 797; St. Louis S. W. Ry. Co. v. Arkansas, 235 U. S. 350, 35 S. Ct. 99, 59 L. Ed. 265; Kansas City, etc., Ry. Co. v. Stiles, 242 U. S. 111, 37 S. Ct. 58, 61 L. Ed. 176; General Ry. Signal Co. v. Virginia, 246 U. S. 500, 38 S. Ct. 360, 62 L. Ed. 854; Locomobile Co. of America v. Massachusetts, 246 U. S. 146, 38 S. Ct. 298, 62 L. Ed. 631.

Plaintiff's case comes to this: Unless the cases of Baltic Mining Co. v. Massachusetts and White Mfg. Co. v. Massachusetts, 231 U. S. 68, 34 S. Ct. 15, 58 L. Ed. 127, often spoken of as the Baltic Mining Co. Case, have been overruled in so far as they would apply to a case such as the present, plaintiff cannot prevail. It is contended that the case is overruled by the following: Looney v. Crane Co., 245 U. S. 178, 38 S. Ct. 85, 62 L. Ed. 230; International Paper Co. v. Massachusetts, 246 U. S., 135, 38 S. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617; Cheney Bros. Co. v. Massachusetts, 246 U. S. 147, 38 S. Ct. 295, 62 L. Ed. 632; Air-Way Elec. Appliance Corp. v. Day, 266 U. S. 71, 45 S. Ct. 12, 69 L. Ed. 169; Alpha Portland Cement Co. v. Massachusetts, 268 U. S. 203, 45 S. Ct. 477, 69 L. Ed. 916, 44 A. L. R. 1219; Hanover Fire Ins. Co. v. Carr, 272 U. S. 494, 47 S. Ct. 179, 71 L. Ed. 372, 49 A. L. R. 713.

First, the contention is that the Baltic Mining Co. Case, in which the excise tax measured by the authorized capital stock, with a maximum of $2,000, was upheld, in a suit by a foreign corporation engaged in interstate and intrastate business in the taxing state, has been expressly overruled by Alpha Portland Cement Co. v. Massachusetts,

268 U. S. 203, 45 S. Ct. 477, 69 L. Ed. 916, 44 A. L. R. 1219. In the latter case the court said:

"It must now be regarded as settled that a state may not burden interstate commerce or tax property beyond her borders under the guise of regulating or taxing intrastate business. So to burden interstate commerce is prohibited by the commerce clause, and the Fourteenth Amendment does not permit taxation of property beyond the state's jurisdiction. The amount demanded is unimportant where there is no legitimate basis for the tax. So far as the language of Baltic Mining Co. v. Massachusetts, 231 U. S. 68, 87 [34 S. Ct. 15, 58 L. Ed. 127], tends to support a different view it conflicts with conclusions reached in later opinions and is now definitely disapproved."

The Alpha Portland Cement Company was engaged solely in interstate commerce, and any license fee or tax was for that reason bound to be a charge or burden upon such commerce. Courts have many times had occasion to say, in effect, that in considering the language used in a decision, the particular point considered should always be borne in mind. The court called attention to this subject in Baltic Mining Co. and S. S. White Mfg. Co. v. Commonwealth of Massachusetts:

"Every case involving the validity of a tax must be decided upon its own facts, and having no disposition to limit the authority of those cases the facts upon which they were decided must not be lost sight of in deciding other and alleged similar cases."

In the case of Air-Way Corp. v. Day, supra, there was no maximum fixed for the annual license fee; the brief of appellant, page 73 of the report, shows that the attack upon the law was because there was not a reasonable limitation in the maximum amount of this fee. The appellant in that case, besides using property owned by it in the state upon which it paid a general property tax, did an annual intrastate business amounting to $70,802.30, for the right of doing which business the lower court upheld an annual fee of $14,926, being about 21 per cent. of the intrastate business done. Consideration was given by the Supreme Court to the amount of this charge; the court, in reversing the lower court, saying:

"The fee determined by the lower court, as well as that fixed by the state officers, is arbitrary. Without holding that such a charge must be measured by the value of the privilege for which it is imposed, it may be said that some relation to such value is a reasonable requirement. Indeed, under the Constitution and laws of Ohio, a tax on" value of the "privileges and franchises cannot exceed the reasonable value of the privilege or franchise originally conferred or its continued annual value thereafter. Southern Gum Co. v. Laylin, 66 Ohio St. 578 [64 N. E. 564]. That value depends on the 'property owned and used and business transacted' in Ohio. Section 8728—11."

In the instant case, for the right to do an annual intrastate business in Washington, which, if the negative pregnant rule be applied, approximates $662,500, it is asked to pay an annual license fee of $580. It is obvious, other things being equal, that there is far less danger of such a fee or tax—less than one-tenth of 1 per cent.—upon the intrastate business transacted, becoming a burden upon plaintiff's interstate business than was true in the foregoing case.

In Cheney Bros. Co. v. Massachusetts, 246 U. S. 147, 38 S. Ct. 295, 62 L. Ed. 632, the act regulating the amount of an excise tax for doing business by the par value of its authorized capital stock, with a maximum of $2,000 upon such tax, the same sections of the Massachusetts law were considered by the court that it had considered in the Baltic Mining Company Case, and were held valid as to those corporations doing both local and interstate business, and void as to a company solely engaged in interstate business. Of one of the companies doing an interstate and local business it was said:

"This company was incorporated under the laws of Minnesota, operates flour mills there, and sells the flour to wholesale dealers throughout the country. It has an office in Massachusetts, where it employs several salesmen for the purpose of inducing local tradesmen to carry and deal in its flour. These salesmen solicit and take orders from retail dealers and turn the same over to the nearest wholesale dealer, who fills the order and is paid by the retailer. Thus the salesman, although not in the employ of the wholesaler, is selling flour for him. Of course this is a domestic business, inducing one local merchant to buy a particular class of goods from another, and may be taxed by the state, regardless of the motive with which it is conducted."

In International Paper Co. v. Massachusetts, 246 U. S. 135, 38 S. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617, a statute of Massachusetts removing such $2,000 limit on the maximum amount of such excise tax was held invalid; the suit being one by a foreign trading corporation largely engaged in in-

terstate commerce, and whose business and property was largely in other states. In this case, the court said of the Baltic Mining Company Case:

"In holding otherwise the state court failed to observe the restricted and limited grounds of our rulings in Baltic Mining Co. v. Massachusetts [231 U. S. 68, 34 S. Ct. 15, 58 L. Ed. 127] and the other cases dealt with and distinguished in the excerpt just quoted from our opinion in Looney v. Crane Co. [245 U. S. 178, 38 S. Ct. 85, 62 L. Ed. 230]. True, the tax sustained in Baltic Mining Co. v. Massachusetts was imposed under the first of the statutes now in question, the one of 1909; but at that time the statute placed a maximum limit on the amount of the tax which, as shown in that and other cases, was a material factor in the decision."

In Looney v. Crane Co., 245 U. S. 178, 38 S. Ct. 85, 62 L. Ed. 230, a Texas statute imposing upon corporations permit charges and excise taxes, both charges being without a maximum fixed as to their amount, in a suit by a foreign trading corporation engaged largely in interstate business, was held invalid. This case follows the rule laid down in Western Union Telegraph Co. v. Kansas, 216 U. S. 1, 30 S. Ct. 190, 54 L. Ed. 355; Pullman Co. v. Kansas, 216 U. S. 56, 30 S. Ct. 232, 54 L. Ed. 378; Ludwig v. Western Union Telegraph Co., 216 U. S. 146, 30 S. Ct. 280, 54 L. Ed. 423; International Textbook Co. v. Pigg, 217 U. S. 91, 30 S. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103; A., T. & S. F. Ry. Co. v. O'Connor, 223 U. S. 280, 285, 32 S. Ct. 216, 56 L. Ed. 436, Ann. Cas. 1913C, 1050."

Of cases including the Baltic Mining Company Case, the court in Looney v. Crane Co. said:

"But despite the controlling decisions dealing with cases in substance identical in fact and principle with the case here presented and the effect given to them in Texas as to one of the statutes here involved, it is now insisted that the statutes are not repugnant to the Constitution of the United States and that error was committed in deciding to the contrary. This is rested on cases decided since those to which we have referred. Baltic Mining Co. v. Massachusetts, 231 U. S. 68 [34 S. Ct. 15, 58 L. Ed. 127]; St. Louis Southwestern Ry. Co. v. Arkansas, 235 U. S. 350 [35 S. Ct. 99, 59 L. Ed. 265]; Kansas City, Fort Scott & Memphis Ry. Co. v. Kansas, 240 U. S. 227 [36 S. Ct. 261, 60 L. Ed. 617]; Kansas City, Memphis & Birmingham R. R. Co. v. Stiles, 242 U. S. 111, [37 S. Ct. 58, 61 L. Ed. 176]. The proposi-

24 F.(2d)—9

tion is, therefore, that these cases overruled the previous decisions. The incongruity of the contention will be manifest when it is observed that not only did the cases relied upon contain nothing expressly purporting to overrule the previous cases, but on the contrary in explicit terms declared that they did not conflict with them and that they proceeded upon conditions peculiar to the particular cases."

The court held that the Baltic Mining Company Case, and other cases mentioned by it, did not overrule the Western Union Telegraph Co. and other cases. It follows that the cases relied upon as overruling the Baltic Mining Co. Case, unless they go farther than the earlier cases, do not do so. Hanover Fire Ins. Co. v. Harding, 272 U. S. 494, 47 S. Ct. 179, 71 L. Ed. 372, 49 A. L. R. 713, has no bearing upon the present question.

In the case of Roberts & Schaefer Co. v. Emmerson, 271 U. S. 50, 46 S. Ct. 375, 70 L. Ed. 827, 45 A. L. R. 1495, the Baltic Mining Company Case was not mentioned; furthermore, that was a domestic corporation doing a purely intrastate business and the tax attacked was upheld. The court said:

"We cannot say that the value of the corporation's franchise may not be measured by the number of no par shares which may be issued rather than their value when issued."

The Supreme Court has also said in Hump Hairpin Co. v. Emmerson, 258 U. S. 290, 42 S. Ct. 305, 66 L. Ed. 622:

"While a state may not use its taxing power to regulate or burden interstate commerce (United States Express Co. v. Minnesota, 223 U. S. 335 [32 S. Ct. 211, 56 L. Ed. 459]; International Paper Co. v. Massachusetts, 246 U. S. 135 [38 S. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617]), on the other hand it is settled that a state excise tax which affects such commerce, not directly, but only incidentally and remotely, may be entirely valid where it is clear that it is not imposed with the covert purpose or with the effect of defeating federal constitutional rights. As coming within this latter description, taxes have been so repeatedly sustained where the proceeds of interstate commerce have been used as one of the elements in the process of determining the amount of a fund (not wholly derived from such commerce) to be assessed that the principle of the cases so holding must be regarded as a settled exception to the general rule. Maine v. Grand Trunk Ry. Co., 142 U. S. 217 [12 S. Ct. 121, 163, 35 L. Ed. 994]; Wisconsin & Michigan Ry. Co. v. Powers, 191 U. S. 379 [24 S. Ct. 107,

48 L. Ed. 229]; Flint v. Stone Tracy Co., 220 U. S. 107 [31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312]; United States Express Co. v. Minnesota, 223 U. S. 335, 343 [32 S. Ct. 211, 56 L. Ed. 459]; Baltic Mining Co. v. Massachusetts, 231 U. S. 68 [34 S. Ct. 15, 58 L. Ed. 127]; Kansas City, Memphis & Birmingham R. R. Co. v. Stiles, 242 U. S. 111 [37 S. Ct. 58, 61 L. Ed. 176]; United States Glue Co. v. Oak Creek, 247 U. S. 321, 326, 327 [38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748]. The turning point of these decisions is whether in its incidence the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of or restraint upon it, or whether it affects it only incidentally or remotely, so that the tax is not in reality a burden, although in form it may touch and in fact distantly affect it."

In Perkins Mfg. Co. v. Jordan (Cal. Sup.) 254 P. 551, where there was a maximum to the amount of the license fee fixed by the statute, in a suit by a foreign corporation engaged in interstate and intrastate business, the Supreme Court of the state of California held a statute fixing such tax upon the basis of the authorized capital stock of the corporation invalid, as violating the commerce clause and the Fourteenth Amendment, the court saying of the Baltic Mining Company Case:

"The so-called Baltic-Dental Case (Baltic Mining Co. and S. S. White Mfg. Co. v. Commonwealth of Massachusetts, 231 U. S. 68, 34 S. Ct. 15, 58 L. Ed. 127) has in some respects been distinguished and in other respects definitely overruled. See Looney v. Crane Co. [245 U. S. 178, 38 S. Ct. 85, 62 L. Ed. 230] supra, and Alpha Portland Cement Co. v. Mass. [268 U. S. 203, 45 S. Ct. 477, 69 L. Ed. 916, 44 A. L. R. 1219] supra."

The Supreme Court of the state of Washington in two decisions in mandamus proceedings, involving the act of 1923, has held the annual license fee valid. Lamont, Corliss & Co. v. Hinkle, 136 Wash. 285, 239 P. 840; State ex rel. Barber Co. v. Hinkle, 138 Wash. 72, 244 P. 398. These decisions were made upon the authority of the Baltic Mining Co. Case, 136 Wash. 291, 239 P. 843. The Supreme Court of Washington in this case says:

"Counsel for the petitioner relies principally upon the following decisions: Western Union Tel. Co. v. State, 216 U. S. 1 [30 S. Ct. 190, 54 L. Ed. 355]; Pullman Co. v. State ex rel. Coleman, 216 U. S. 56 [30 S. Ct. 232, 54 L. Ed. 378]; Ludwig v. Western

Union Tel. Co., 216 U. S. 146 [30 S. Ct. 280, 54 L. Ed. 423]; Looney v. Crane Co., 245 U. S. 178 [38 S. Ct. 85, 62 L. Ed. 230]; International Paper Co. v. Commonwealth of Massachusetts, 246 U. S. 135 [38 S. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617]; Cheney Brothers Co. v. Commonwealth of Massachusetts, 246 U. S. 147 [38 S. Ct. 295, 62 L. Ed. 632]; Air-Way Electric Appliance Corporation v. Day, 266 U. S. 71 [45 S. Ct. 12, 69 L. Ed. 169]; Ozark Pipe Line Corporation v. Monier, 266 U. S. 555 [45 S. Ct. 184, 69 L. Ed. 439]; Mulford Co. v. Cury [Curry] 163 Cal. 276, 125 P. 236; Hirschfeld v. McCullagh, 64 Or. 502, 127 P. 541, 130 P. 1131. In every one of these cases, except the latter, it seems plain that the controlling consideration inducing the court to hold the tax unconstitutional was the fact that it unduly burdened interstate commerce. In the last cited decision, the Oregon court does not make it plain as to whether or not there was there involved a question of a tax burden upon interstate commerce, but it seems apparent from the authorities cited in support of its holding that its conclusion was rested wholly upon decisions of the federal Supreme Court and of the California Supreme Court, all of which had to do with the question of a tax unduly burdening interstate commerce. We think the Oregon decision is not persuasive in support of the due process of law contention here made on behalf of the petitioner."

The effect of the foregoing decisions is that, where the maximum excise fixed by the law does not itself appear to be unreasonable in amount, and the method of its computation ignores as a basis intrastate commerce, and takes for that purpose the amount of the authorized capital stock, that fact alone is not sufficient to invalidate the tax, but that the result, the excise demanded under the statute, must bear no reasonable relation to the intrastate business transacted before such is the effect. It is a well-known rule of law, even where there is a positive statutory prohibition of restraint of trade, that all restraint is not prohibited.

No righteous cause for complaint is stated in the bill, for it fails to show any such substantial burden imposed by these statutes upon the interstate commerce of plaintiff, or such taking of its property, or such discrimination as to warrant the court in enjoining the collection by the state officers of the fees demanded.

The motion to dismiss will be granted upon both of the grounds upon which it is made.

DIETRICH, Circuit Judge (concurring). Defendant's first contention is that there is no basis for equitable relief, for the reason that plaintiff has a plain, speedy, and adequate remedy at law, in that it could pay the demanded charges under protest and then bring an action to recover them, citing Great Northern Ry. Co. v. Stevens County, 108 Wash. 238, 183 P. 65, in support of the view that such a course is available. If it be assumed that the averments of the bill do not bring the case within the reach of the rule recognized in Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764, Ludwig v. Western Union Tel. Co., 216 U. S. 146, 30 S. Ct. 280, 54 L. Ed. 423, Adams Express Co. v. City of New York, 232 U. S. 14, 34 S. Ct. 203, 58 L. Ed. 483, Ohio Tax Cases, 232 U. S. 576, 587, 34 S. Ct. 372, 58 L. Ed. 737, Looney v. Crane Co., 245 U. S. 178, 38 S. Ct. 85, 62 L. Ed. 230, and Air-Way Co. v. Day, 266 U. S. 71, 79, 45 S. Ct. 12, 69 L. Ed. 169, I am nevertheless of the opinion that the suit is cognizable in equity. "The remedy at law, to be adequate, must be a remedy at law in the federal court where jurisdiction in equity is sought. * * * It is not enough that there be a remedy at law in the state courts. * * *" Simkin's Fed. Proc. p. 275. And see, also, Montgomery's Manual of Federal Jurisdiction (3d Ed.) § 702; 21 C. J. 42, § 17; Smyth v. Ames, 169 U. S. 466, 18 S. Ct. 418, 42 L. Ed. 819; C., B. & Q. R. Co. v. Osborne, 265 U. S. 14, 44 S. Ct. 431, 68 L. Ed. 878; Risty v. Chicago, R. I. & P. R. Co., 270 U. S. 378, 46 S. Ct. 236, 70 L. Ed. 641; Franklin v. Nevada-California P. Co. (9th C. C. A.) 264 F. 643. The Washington case, supra, was brought against a county. Payment here would have to be made to the state, and any action for recovery must be against the state. But without its consent the state of Washington cannot be sued in its own courts, and under the Eleventh Amendment to the Constitution of the United States it is exempt from suit in the federal courts. The only pertinent consent that has come under my notice is found in section 886, Rem. Comp. Stat. Wash., which provides that "any person or corporation having any claim against the state of Washington shall have a right to begin an action against the state in the superior court of Thurston county." Within the principles above explained, the restricted privilege thus conferred falls far short of providing an adequate remedy at law.

I find no substantial ground for holding invalid the provisions involved in the first cause of action, under which plaintiff is required to pay an initial or filing fee of $1,180, less certain credits. Without the consent of the state, foreign corporations cannot do business therein, and they may be arbitrarily excluded. Subject to the qualification that such corporations cannot be required to relinquish rights secured to them by the Constitution of the United States, the state may impose upon the privilege of entering its borders and transacting business therein such conditions as it sees fit. The rule is clearly stated in Hanover Ins. Co. v. Harding, 272 U. S. 494, 507, 47 S. Ct. 179, 71 L. Ed. 372, 49 A. L. R. 713, together with illustrative exceptions. The case here is not thought to fall within the range of the exceptions. The fee is not intended to be a burden upon interstate commerce, or a tax upon property beyond the jurisdiction of the state. It is in fact a relatively small burden, and does not purport to have any relation to the amount of interstate business transacted, and in fact bears none. It is a single charge for the privilege of entering the state and there exercising its corporate functions in the transaction of intrastate business, for an indefinite period. It is imposed alike upon all corporations transacting business in the state, including those which have no interstate transactions at all. True, any exaction from a corporation engaged in both intrastate and interstate business may be said to affect the latter, but by engaging in both classes the corporation cannot in effect nullify the power of the state respecting the class which is otherwise admittedly subject to its control. If, as seems to be conceded, the state would have the power to require outright of all foreign corporations payment of such a fee in the amount of $1,180, why should we regard as invalid a law which less arbitrarily seeks to relate the fee to the magnitude and value of the privilege conferred.

Touching the objection that authorized, but unissued, stock is not a reasonable factor to be considered, it is to be noted that the license secured upon the payment of the fee is for all time and under it the corporation may without further payment employ its entire authorized capital. True, the power to issue stock is derived from the state where the corporation is organized; but the right to use the proceeds of stock so issued in carrying on business in another state is the grant of that state. Were issued stock adopted as the measure of the charge, the corporation might issue but a nominal amount, procure entrance in a foreign state upon that basis, and thereupon issue all of

its authorized capital stock, thus evading the payment of an adequate fee. But, however that may be, the measure, though imperfect in operation, as are all systems of taxation and license, is more equitable than a uniform charge for all corporations, which the Legislature had the power to impose. And, it may be added, the plaintiff does not suggest a more reasonable substitute.

Because of certain distinct considerations the validity of the tax assailed in the second cause of action is not so free from doubt. To escape the charge that it is an unwarranted burden upon interstate commerce, or a tax upon property without the jurisdiction of the state, it should bear some reasonable relation to the extent of the intrastate business and the value of the right to transact such business, and, when available, a standard should be adopted in harmony with that idea. These taxes are collected annually, and there would seem to be no substantial reason, other than that of convenience, why they should not be computed on the volume of actual intrastate business for the current year.

However, as noted in the opinions of my associates, the question in various aspects has frequently been considered by the Supreme Court, and we are to find guidance in its decisions. In the analysis of these decisions by Judge CUSHMAN and in his conclusion I concur, with some additional comments. Admittedly, under the doctrine of the Baltic Mining Co. Case, the Washington statute is valid. In the nine cases arising in Massachusetts and decided four years later, reported as International Paper Co. v. Mass., 246 U. S. 135, 38 S. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617, Locomobile Co. v. Mass., 246 U. S. 146, 38 S. Ct. 298, 62 L. Ed. 631, and Cheney Brothers Co. et al. v. Mass. (seven cases) 246 U. S. 147, 38 S. Ct. 295, 62 L. Ed. 632, clearly the doctrine of the Baltic Case is not overruled or qualified, but reaffirmed. In the Paper Company and the Locomobile Cases the taxes were held invalid for the reason alone that prior to their imposition the state statute had been amended by removing therefrom the maximum limit of the exaction, and in the Cheney Case because the plaintiff was engaged exclusively in interstate business. In the other six cases, where the corporations were engaged in both classes of business and the statute had not been amended prior to the imposition of the tax, the court, following the rule of the Baltic Case, denied relief. The court regarded the presence or absence of a reasonable maximum, or the fact that the corporation was engaged exclusively in interstate business, as a controlling consideration.

In the Air-Way Corporation Case, 266 U. S. 71, 45 S. Ct. 12, 69 L. Ed. 169, apparently the statute provided no maximum, and in other respects was unlike the Washington law. That the rule of the Baltic Case was not thought to be involved is to be inferred from the fact that neither party cited it upon any substantive issue and it is not referred to in the opinion. In the Alpha Cement Case, 268 U. S. 203, 45 S. Ct. 477, 69 L. Ed. 916, 44 A. L. R. 1219, after explaining the issue the court thus stated the question for decision: "May a state impose upon a foreign corporation which transacts only interstate business within her borders an excise tax measured by a combination of two factors—the proportion of the total value of capital shares attributed to transactions therein, and the proportion of net income attributed to such transactions," adding that "Cheney Brothers Co. v. Massachusetts, 246 U. S. 147, 153, 154, 38 S. Ct. 295, 62 L. Ed. 632, necessitates a negative reply." And in summing up its decision the court further said: "The excise challenged by plaintiff in error is not materially different from the one declared unconstitutional in Cheney Brothers Co. v. Massachusetts and cannot be enforced against a foreign corporation which does nothing but interstate business within the state." It will thus be seen that the decision was regarded as being strictly within the rule of the Cheney Brothers Case, but, as we have seen, that case cannot be deemed out of harmony with the Baltic Case, for the reason that in the six other cases decided at the same time the court expressly applied, without qualification or limitation, the doctrine of the Baltic Case.

I therefore concur in Judge CUSHMAN'S general conclusion.

BOURQUIN, District Judge. I dissent. Although the majority makes out a case of reasonableness in respect to the amount of the tax, it is believed the impost contravenes a principle which may be found threading the maze of Supreme Court opinions with a fair degree of consistency, perhaps greater consistency than any other.

Therein settled and clear principles are few. The court itself has said that they are of "difficult" formulation, and that "every case must be decided upon its own facts"—a comforting refuge, if not alibi, in times of legal stress. And that principle is that "a state cannot tax property belonging to a foreign corporation and neither located nor used

within the confines of the state." International, etc., Co. v. Mass., 246 U. S. 141, 38 S. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617; Union, etc., Co. v. Wright, 249 U. S. 282, 39 S. Ct. 276, 63 L. Ed. 602; Alpha, etc., Co. v. Mass., 268 U. S. 218, 45 S. Ct. 477, 69 L. Ed. 916, 44 A. L. R. 1219.

In application of said principle, the court has decided that as the property represented by capital stock in excess of that used in the state, is property outside the state, such excess is not taxable by the state. Air-Way, etc., Co. v. Day, 266 U. S. 82, 45 S. Ct. 12, 69 L. Ed. 169. That is the case at bar. The tax is within the ban of the due process clause of the Constitution, and when levied upon a corporation engaged in interstate commerce, within that of the commerce clause as well. Moreover, the tax also upon authorized, but unissued, stock is unequal and contrary to the Fourteenth Amendment. Air-Way Case, supra.

It is true that in Roberts, etc., Co. v. Emmerson, 271 U. S. 50, 46 S. Ct. 375, 70 L. Ed. 827, 45 A. L. R. 1495, it is said that a state may tax a domestic corporation upon its unissued stock. But in that case the corporation was the creature of the state, all its property was within the state, all its stock was issued, and it was not engaged in interstate commerce, a radically different case from this at bar, invoking very different principles. Its general expressions, more or less dicta, must be read in the light of its peculiar facts, and not taken as modifying the Air-Way Case. It is equally true that in Baltic, etc., Co. v. Mass., 231 U. S. 68, 34 S. Ct. 15, 58 L. Ed. 127, a tax on the authorized capital stock of a foreign corporation, far in excess of property within the state, was upheld; for that (1) the tax was subject to a statutory limit of $2,000; (2) the amount was small when contrasted with that in Western, etc., Co. v. Kan., 216 U. S. 1, 30 S. Ct. 190, 54 L. Ed. 355; and (3) it was "not void because imposed upon property beyond the state's jurisdiction." At least the second and third of these reasons, however, are overruled in Alpha, etc., Co. v. Mass., supra, and the first, if not overruled, has no legitimate justification. It is an excuse rather than a reason.

For in that case, as in this at bar, the limit avails nothing to the corporation, is not attained; despite it, the tax is as great as if was no limit, and none the less is a tax upon property beyond the state's confines. And in principle and by implication the Alpha Case overrules said first reason.

It is noted that considerable water has run under the bridge since the Baltic Case, and the latter is little more than a relic of a period of spirit and tendencies quite different from to-day's, that spirit and tendencies to which all courts are more or less responsive.

The motion to dismiss ought to be denied, and the injunction granted.