## J. I. CASE THRESHING MACHINE CO., Respondent, v. STEWART, Secretary of State, Appellant.

(No. 4,764.)

(Submitted June 7, 1921.   Decided June 27, 1921.)

[199 Pac. 909.]

*License Fees—Foreign Corporations—Capital Stock—Certificates of Increase—Filing Fees—Statutes—Unconstitutionality—Federal Constitution—Commerce and Due Process of Law Clauses.*

Foreign Corporations—Capital Stock—Certificate of Increase—Filing Fee—Statute—Unconstitutionality.

 1. *Held,* that section 165, Revised Codes, requiring the secretary of state to collect a graduated fee for the filing of certificates of incorporation and increase of capital stock, based upon the entire capital stock, is invalid as to a foreign corporation engaged both in interstate and intrastate business and only a portion of whose capital stock is represented by property owned and business done by it in this state, as in contravention of the commerce and due process of law clauses of the federal Constitution.

Courts—Federal Questions—Decision of United States Supreme Court Conclusive.

 2. In a case involving a federal question, the decisions of the supreme court of the United States are conclusive and binding upon state courts.

*Appeal from District Court, Lewis and Clark County; Wm. H. Poorman, Judge.*

Action by the J. I. Case Threshing Machine Company against Charles T. Stewart, as Secretary of State of the State of Montana. From a judgment for plaintiff, defendant appeals. Affirmed.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A. Foot,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. Foot* argued the cause orally.

---

 1. Imposition of license tax on foreign corporations, see notes in 96 Am. Dec. 338; 3 Ann. Cas. 632; Ann. Cas. 1913C, 812; Ann. Cas. 1916C, 1248; Ann. Cas. 1918C, 620.

*Messrs. Gunn, Rasch & Hall,* for Respondent, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The J. I. Case Threshing Machine Company is a Wisconsin corporation engaged in the manufacture and sale of farm machinery, with its principal place of business at Racine. It maintains a branch office and supply depot at Billings, Montana, and sub-branch houses at Lewistown, Great Falls and Glasgow. It engages in interstate and intrastate business, but its interstate business is by far the greater. It had complied with the laws of Montana and had actively engaged in the transaction of its business in this state, when it increased its capital stock from $5,000,000 to $40,000,000. It thereupon tendered to the secretary of state of this state, for filing, a duly authenticated copy of the certificate of increase, together with a filing fee of $3. The secretary of state refused to file the certificate except upon the payment of $3,685—the correct fee computed according to the provisions of section 165, Revised Codes. Payment was thereupon made under protest, and this action instituted to recover the difference between the amount tendered and the amount demanded. The trial court rendered judgment for the plaintiff, and defendant appealed.

The integrity of the judgment depends upon the answer to [1] the inquiry: Is section 165, Revised Codes, a valid legislative enactment enforceable against the plaintiff in this action? That section reads as follows:

"The secretary of state, for services performed in his office, must charge and collect the following fees:  *  *  *  IV. For recording and filing each certificate of incorporation and each certificate of increase of capital stock, the following amounts shall be charged: Amounts up to $100,000, fifty cents per thousand dollars. Additional from $100,000 to $250,000, forty cents per thousand dollars. Additional from $250,000 to $500,000 thirty cents per thousand dollars. Additional from $500,000 to

$1,000,000, twenty cents per thousand dollars.  Additional over $1,000,000, ten cents per thousand dollars.  Providing that no fee for filing any articles of incorporation or increase of capital stock shall be less than $20, except religious societies, churches, and organizations for religious purposes, not having a capital stock, and not being organized for the purpose of profit."

Many other states have passed similar statutes, and the controversy over the constitutionality of such legislation has been waged in the courts almost continuously during the last ten years.  In 1910 the supreme court of the United States held a similar Act of the Kansas legislature invalid as imposing restrictions upon interstate commerce and taking property without due process of law.  (*Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, 54 L. Ed. 355, 30 Sup. Ct. Rep. 190.) That case was thereafter followed by *Pullman Co.* v. *Kansas,* 216 U. S. 56, 54 L. Ed. 378, 30 Sup. Ct. Rep. 232; *Ludwig* v. *Western Union Tel. Co.,* 216 U. S. 146, 54 L. Ed. 423, 30 Sup. Ct. Rep. 280; *International Text-Book Co.* v. *Pigg,* 217 U. S. 91, 18 Ann. Cas. 1103, 27 L. R. A. (n. s.) 493, 54 L. Ed. 678, 30 Sup. Ct. Rep. 48; and *Atchison, T. & S. F. R. Co.* v. *O'Connor,* 223 U. S. 280, Ann. Cas. 1913C, 1050, 56 L. Ed. 436, 32 Sup. Ct. Rep. 216.  In 1913 the question was presented to this court, and, deeming ourselves bound by the decisions of the *Western Union Telegraph Company Case* and kindred cases above, we held that section 165 cannot be enforced as against a foreign corporation engaged in interstate commerce.  (*Chicago etc. Ry. Co.* v. *Swindlehurst,* 47 Mont. 119, 130 Pac. 966.)  In 1913 the question again came before the supreme court of the United States, in *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 58 L. Ed. 127, 34 Sup. Ct. Rep. 15.  The statutes of Massachusetts involved (Laws 1909, Chap. 490) provided for an excise tax of one-fiftieth of one per cent upon the par value of the authorized capital stock of every foreign corporation doing business in the state, but fixed a limit of $2,000 as the maximum fee to be charged in any case.  This statute was upheld as a valid exercise of

legislative authority by the state, and the opinion was quite general among members of the legal profession that the court had, in effect, overruled its former decisions in the *Western Union Telegraph Company Case* and other cases of that group. In harmony with the decision in the *Baltic Mining Co. Case* are *St. Louis, S. W. R. Co.* v. *Arkansas,* 235 U. S. 350, 59 L. Ed. 265, 35 Sup. Ct. Rep. 99; *Kansas City, Pt. S. & M. R. Co.* v. *Botkin,* 240 U. S. 227, 60 L. Ed. 617, 36 Sup. Ct. Rep. 261; *Kansas City, M. & B. R. Co.* v. *Stiles,* 242 U. S. 111, 61 L. Ed. 176, 37 Sup. Ct. Rep. 58; and *General Railway Signal Co.* v. *Virginia,* 246 U. S. 500, 62 L. Ed. 854, 38 Sup. Ct. Rep. 360.

When the question again presented itself to this court in 1914, we held that section 165 might be enforced against a foreign corporation engaged in interstate business in this state, although but a small percentage of its capital stock was represented by the business transacted here, basing our conclusion upon the decision in *Baltic Mining Co.* v. *Massachusetts,* above. (*State ex rel. General Electric Co.* v. *Alderson,* 49 Mont. 29, 140 Pac. 82.) In 1915 our legislature supplanted section 165 so far as it prescribes the fees for filing a certified copy of the charter or articles of incorporation of a foreign corporation entering this state to conduct business, but it did not make any change in the schedule of fees to be charged for filing a certificate of increase of capital stock. (Chap. 37, Laws 1915.) This new legislation met the objections lodged against the Kansas statute in the *Western Union Telegraph Company Case* by imposing the fee only upon the proportion of the foreign corporation's capital stock represented by its property and business in this state, as opposed to the plan adopted in section 165, which imposes the fee upon the entire capital stock wherever held or employed and without reference to the amount of capital used or business transacted in this state. But Chapter 37 has no application to the case now before us.

The secretary of state proceeded under the provisions of section 165 above, and we are confronted again with the question: Is this statute a valid legislative enactment as applied to any foreign corporation a portion only of whose capital stock is represented by property owned and business transacted in this state? The prevailing impression that the *Baltic Mining Company Case* had modified or overruled the decision in the *Western Union Telegraph Co. Case* was finally dissipated completely by more recent decisions of the supreme court of the United States. In *Looney* v. *Crane Co.,* 245 U. S. 178, 62 L. Ed. 230, 38 Sup. Ct. Rep. 85, decided in 1917, there came before the court the question of the validity of a statute of Texas in principle the same as our section 165, and upon a statement of facts which cannot be distinguished from the facts of the present case. The court held the statute invalid, reaffirmed the *Western Union Case,* and referred specifically to the contention advanced that the *Baltic Mining Co. Case* had overruled it. The court not only disclaimed any intention to do so, but insisted that no such effect could be given to the decision in the latter case. On the contrary, the court pointed out that the *Baltic Case,* and other cases of that group, proceeded upon conditions peculiar to the particular cases; that the statute involved in each of those controversies contained particular provisions which so qualified and restricted its operation and necessarily its effect as to lead to the result reached. Those conditions, the court said, related to the subject matter upon which the tax was levied or to the amount of the taxes in other respects paid by the corporation, or limitations on the amount of the tax authorized when a much larger amount would have been due upon the basis upon which the tax was apparently levied. In 1914 the Massachusetts statute of 1909 was amended by removing the limitation of $2,000 as the maximum tax to be collected. In *International Paper Co.* v. *Massachusetts,* 246 U. S. 135, Ann. Cas. 1918C, 617, 62 L. Ed. 624, 38 Sup. Ct. Rep. 292, the validity of this amended statute was the question for determination. The

court again reaffirmed its decision in the *Western Union Telegraph Co. Case,* held that the new legislation in Massachusetts rendered the statute invalid, and again reviewed the controversy which had arisen over the seeming conflict between the group of cases represented by the *Baltic Mining Co. Case* on the one hand, and the group represented by the *Western Union Telegraph Co. Case* on the other, expounded the views of the court, and declared that the *Western Union Telegraph Co. Case* and kindred cases, including *Looney* v. *Crane Co.,* were decisive of the case then under consideration. The court declared the following principles to be settled:

"1. The power of a state to regulate the transaction of local business within its borders by a foreign corporation— meaning a corporation of a sister state—is not unrestricted and absolute, but must be exerted in subordination to the limitations which the Constitution places on state action.

"2. Under the commerce clause exclusive power to regulate interstate commerce rests in Congress, and a state statute which either directly or by its necessary operation burdens such commerce is invalid, regardless of the purpose with which it was enacted.

"3. Consistently with the due process clause, a state cannot tax property belonging to a foreign corporation and neither located nor used within the confines of the state.

"4. That a foreign corporation is partly, or even chiefly, engaged in interstate commerce, does not prevent a state in which it has property and is doing a local business from taxing that property and imposing a license fee or excise in respect of that business, but the state cannot require the corporation, as a condition of the right to do a local business therein, to submit to a tax on its interstate business or on its property outside the state.

"5. A license fee or excise of a given per cent of the entire authorized capital of a foreign corporation doing both a local and interstate business in several states, although declared by the state imposing it to be merely a charge for the privilege

of conducting a local business therein, is essentially and for every practical purpose a tax on the entire business of the corporation, including that which is interstate, and on its entire property, including that in other states; and this because the capital stock of the corporation represents all its business of every class and all its property, wherever located.

"6. When tested, as it must be, by its substance, its essential and practical operation, rather than its form or local characterization, such a license fee or excise is unconstitutional and void as illegally burdening interstate commerce and also as wanting in due process because laying a tax on property beyond the jurisdiction of the state."

Furthermore, it was observed that the Massachusetts statute of 1909 contained the limitation above mentioned, and that that feature of the law was a material factor in the decision of the *Baltic Mining Co. Case*. At the same time a like conclusion was announced in *Locomobile Co.* v. *Massachusetts,* 246 U. S. 146, 62 L. Ed. 631, 38 Sup. Ct. Rep. 298. Whatever difference of opinion may have existed heretofore respecting the power of a state to exact an excise tax as a condition precedent to the right of a foreign corporation to do business therein, further discussion of the subject must now be deemed foreclosed. A statute which imposes the tax upon the total capital stock when only a portion thereof is represented by the property and business of the corporation in the state imposing taxes is invalid. If the corporation is engaged in interstate commerce in whole or in part, such a statute contravenes the commerce clause of the federal Constitution; and such a statute is violative of the due process clause of the Fourteenth Amendment, whether the corporation is engaged in interstate or intrastate commerce. A statute may escape condemnation if it imposes the tax only upon the proportion of the total capital stock represented by the property and business in the state imposing the tax, or if it provides a reasonable maximum charge to be imposed without reference to the total capital stock.

It would be idle now to attempt to justify the decision in
[2] the *Alderson Case,* above, or to volunteer our views upon
the subject now under discussion. In a case involving a fed-
eral question such as is here presented, the decisions of the
supreme court of the United States are conclusive and binding
upon us to the same extent and with the like effect as are the
Constitution and laws of the United States, anything in our
own Constitution, statutes and decisions to the contrary not-
withstanding. Under the doctrine of the *Western Union Tele-
graph Company Case* and kindred cases, including the three
recent ones mentioned, the invalidity of section 165, as applied
to this plaintiff and other foreign corporations similarly sit-
uated, is established beyond controversy.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REY-
NOLDS, COOPER and GALEN concur.