[Nos. 21092, 21093. *En Banc.*  May 8, 1928.]

GREAT NORTHERN RAILWAY COMPANY, *Respondent*, v.
THE STATE OF WASHINGTON, *Appellant.*

GREAT NORTHERN RAILWAY COMPANY, *Respondent*, v.
THE STATE OF WASHINGTON, *Appellant.*[1]

[1] CONSTITUTIONAL LAW (24)—COURTS (38)—PRESUMPTIONS—RULES
OF DECISION—UNITED STATES COURTS.  Upon Federal questions,
statutes will be presumed constitutional and valid unless clearly
to the contrary; and the decisions of the United States su-
preme court are binding on state courts.

[2] COMMERCE (1)—POWERS REMAINING IN STATES — INTERSTATE
COMMERCE.  The power of Congress over interstate commerce
is absolute and the state cannot place any undue or direct
burden thereon, and cannot place restrictions on the right of
foreign corporations to do business in the state, where the
company is an interstate carrier and not free to withdraw from
its interstate business.

[3] COMMERCE (6)—LICENSES (7)—CORPORATE FRANCHISE—BURDEN
ON INTERSTATE COMMERCE.  The amendment of our license tax
law, Rem. 1927 Sup., §§ 3836, 3837, 3841, 3853, exacting payment
of annual license taxes from foreign corporations as a condi-
tion precedent to engaging in business in this state, based upon
the amount of issued capital stock, up to a fixed maximum, is
unconstitutional and void as to railway companies doing both
a local and interstate business, in that (1) as a carrier the
company is not free to withdraw from business in this state;
(2) there is essentially a tax and burden on its entire business,
including its interstate business, beyond the power of the state;
and (3) a violation of the due process clause by imposing a tax
on property beyond the jurisdiction of the state.

Appeals from judgments of the superior court for
Thurston county, Wilson, J., entered December 10,
1927, in favor of the plaintiff, upon overruling demur-
rers to the complaints in actions to recover corporation
excise taxes paid to the state.  Affirmed.

[1]Reported in 267 Pac. 506.

*The Attorney General* and *L. B. Donley, Assistant,* for appellant.

*Thomas Balmer, Charles S. Albert,* and *Edwin C. Matthias,* for respondent.

*Palmer, Askren & Brethorst, E. B. Palmer, C. H. Winders, L. B. da Ponte,* and *A. E. Simon, amici curiae.*

HOLCOMB, J.—These two cases on appeal, being substantially alike, were treated by the parties as one case. The actions are brought by respondents to recover certain corporation excise taxes paid to the state pursuant to provisions of ch. 149, Laws of 1925, Ex. Ses., p. 418; Rem. 1927 Sup., § 3841 (amending Rem. Comp. Stat., § 3841), § 3 of which chapter reads:

"Sec. 3. That section 3841 of Remington's Compiled Statutes, as amended by section 4, chapter 144, Session Laws of 1923, be amended to read as follows:

"Section 3841. Every corporation incorporated under the laws of this state, and every foreign corporation, having its articles of incorporation on file in the office of the secretary of state, shall, on or before the first day of July of each and every year, pay to the secretary of state, for the use of the state, the following license fees in proportion to its authorized capital stock, as follows:

"Capital of $50,000.00, or less, fee $15.00;

"Capital in excess of $50,000.00 and up to and including $100,000.00, fee $25.00;

"Capital in excess of $100,000.00 and up to and including $500,000.00, fee $50.00;

"Capital in excess of $500,000.00 and up to and including $1,000,000.00, fee $100.00;

"Capital in excess of $1,000,000.00 and up to and including $2,000,000.00, fee $150.00; and $10.00 for each $1,000,000.00 or fraction thereof of capital in excess of $2,000,000.00; Provided, however, That the total amount of such annual license fee shall in no case exceed $3,000. Each corporation failing to pay the said annual license fee, on or before the first day of July

of any year, and desiring to pay the same thereafter, and before the first day of January next following, shall pay to the secretary of state, for the use of the state, in addition to the said license fee the following further fee, as a penalty for such failure, the sum of two dollars and fifty cents; Provided, however, That building and loan and savings and loan associations paying special fees provided for in the act under which same are incorporated shall not be required to pay the regular fee provided herein: Provided, further, That the annual fee required to be paid to the department of public works by any public service company shall be deducted from the annual fee provided herein, and the excess only shall be collected under this act.''

Also to recover certain filing fees paid to the secretary of state pursuant to the same chapter.

Section 1 of that act (Laws of 1925, Ex. Ses., p. 417 § 1; Rem. 1927 Sup., § 3836) provides for filing fees graded according to capitalization of both foreign and domestic corporations desiring to do business in this state and reads:

''Sec. 1.  That section 3836 of Remington's Compiled Statutes, as amended by Section 1, Chapter 144, Session Laws of 1923, be amended to read as follows:

''Section 3836.  Every corporation incorporated under the laws of this state, or of any state or territory in the United States or of any foreign state or country, required by law to file articles of incorporation in the office of the secretary of state, shall pay to the secretary of state a filing fee in proportion to its authorized capital stock as follows:

''Capital not exceeding $50,000.00, fee $25.00;

''Capital of more than $50,000,00, and less than $100,000.00, fee $40.00;

''Capital of more than $100,000.00, or more, and less than $150,000.00, fee $75.00;

''Capital of $150,000.00 or more, and less than $200,-000.00, fee $100.00;

''Capital of $200,000.00, or more, and less than $300,-000.00, fee $150.00;

"Capital of $300,000.00, or more, and less than $400,-000.00, fee $200.00;

"Capital of $400,000.00, or more, and less than $500,-000.00, fee $250.00;

"Capital of $500,000.00, or more, and less than $1,-000,000.00, fee $500.00;

"Capital of $1,000,000.00, or more, and less than $2,-000,000.00, fee $750.00; and $10.00 additional for each $1,000,000.00, or major fraction thereof, of capital stock in excess of $2,000,000.00: Provided, however, That the total filing fee for filing such articles of incorporation shall in no case exceed the sum of $3,-000.00.

"Sec. 2.   That section 3837 of Remington's Compiled Statutes, as amended by section 2, chapter 144, Session Laws of 1923, be amended to read as follows:

"Section 3837.   Every corporation, foreign or domestic, desiring to file in the office of the secretary of state articles amendatory or supplemental articles increasing its capital stock, or certificates of increase of capital stock, shall pay to the secretary of state the fees prescribed in the preceding section for the total amount to which the capital stock of the corporation is so increased, less the amount already paid for filing the original articles of incorporation, or original articles and amendatory or supplemental articles, or certificates of increase, and every such corporation desiring to file amendatory or supplemental articles decreasing, or certificate of decrease of capital stock, shall pay to the secretary of state a filing fee of $25.00. For filing of other amendatory or supplemental articles, it shall pay a fee of $10.00: Provided, however, That the total amount paid by any corporation for filing its original articles of incorporation and all of its articles amendatory or supplemental articles increasing its capital stock or certificates of increase of capital stock, shall in the aggregate in no case exceed the sum of $3,000.00, plus $10.00 for each separate instrument filed in addition to its original articles of incorporation." Laws of 1925, Ex. Ses., p. 418, § 2; Rem. 1927 Sup., § 3837.

Chapter 147, Laws of 1925, Ex. Sess., p. 410 (Rem. 1927 Sup., § 3853), amending Rem. Comp. Stat., § 3853, is also involved, which requires every foreign corporation desiring to do business in the state to file, besides its charter or corporate articles,

"  . . . a certified copy of each and all amendments or supplements to such charter, . . . and a certified copy of each and all of its certificates of increase or decrease of its capital stock."

The fees applying in connection therewith are fixed by ch. 149, Laws of 1925, Ex. Sess., p. 417, *supra.*

The complaint alleges that respondent is a railway company engaged in interstate commerce, with an authorized capital stock of $250,000,000; that it has been engaged in its business in the state for more than thirty years, and that, until 1897, no annual license fee was imposed by the state upon either domestic or foreign corporations, and that, by Laws of 1897, ch. 70, p. 134, an annual license fee of ten dollars was imposed upon every corporation having capital stock; and was amended by Laws of 1907, ch. 140, p. 271, Rem. Comp. Stat., § 3841, by increasing the license fee to fifteen dollars per year; and further amended by Laws of 1923, ch. 144, p. 464, § 4 (Rem. 1927 Sup., § 3841), by making provision for the payment of certain annual license fees in proportion to the authorized capital stock of the corporation at the same rates as those prescribed in ch. 149, Laws of 1925, Ex. Sess., p. 418, § 3, *supra,* on capital up to, and including, $2,000,000, but above $2,000,000 the license fee prescribed was at the rate of one dollar for each $1,000,000 or fraction thereof of the authorized capital; that this was again amended by the present law, above set forth, increasing the fee imposed upon corporations having capital stock above $2,000,000 from one dollar to ten dollars for each $1,000,000 or fraction thereof,

with a proviso, however, that in no case should the total amount of such annual license fee exceed $3,000; and further providing that the annual fee, required to be paid to the department of public works by any public service company, shall be deducted from the annual fee provided herein and the excess only shall be collected under this act. It is then alleged that respondent has paid to the department of public works the sum of $1,500 as a public service company and that, upon the basis of ch. 149, § 3, *supra,* respondent has paid as follows:

| | |
|---|---|
| "Upon the first $2,000,000.00 of capital stock ................................. | $150.00 |
| "Upon the remaining $248,000,000.00.... | 2,480.00 |
| Total ............................. | $2,630.00 |
| "Less a deduction of the annual fee required to be paid by the department of public works ........................ | $1,500.00 |
| "Leaving the amount of the annual license fee demanded of respondent the sum of ............................. | $1,130.00" |

It is then alleged that respondent's authorized capital represents its property holdings in many states, not more than twenty per cent of its property being located in this state, and that it also owns other property and securities in other companies located outside this state, and that on December 31, 1926, the estimated value of its properties in this state was approximately $104,000,000, and of the assessed value of $76,900,000, and that its total operating revenue in this state for the calendar year 1926 was about $7,000,000.

It is also alleged that, because of serious results by way of being prevented from doing business in the state, forbidden to bring suits in the courts, and its agents being subject to prosecution for doing any bus-

iness for the company in case of the failure to pay such fee as prescribed, it was thereby coerced into paying under protest the fees to the state by it demanded.

It is then alleged that the provision of ch. 149, *supra,* is unconstitutional because it is in violation of § 8, Art. I, and of the Fourteenth Amendment to the Federal constitution, and that the recovery of the tax so paid should be allowed.

A second cause of action is set forth in the first of the above numbered cases, setting out substantially the same general facts alleging the same constitutional objections as contained in the first cause of action, with the difference that there is therein set forth the provisions of §§ 1 and 2 of ch. 149, Laws of 1925, Ex. Sess., pp. 417, 418, relating to the filing fees required by corporations filing its articles or amendments thereto with the secretary of state as a prerequisite to its doing business in this state; and that it had tendered thirteen separate certificates of increase from $2,000,000 to $250,000,000. For these filings the secretary exacted the maximum of $3,000, plus ten dollars for each certificate, less ten dollars for filing the original certificate.

Demurrers upon the usual statutory grounds on behalf of the state were interposed to the complaints. The demurrers being overruled, the state elected to stand thereon and interposed no answers. Judgments were thereupon duly entered in favor of respondent for the amounts demanded upon its two causes of action in one complaint and one cause of action in the other. The judgments directed recovery by the railway of $1,130, with interest from June 26, 1926, on the first cause of action in the 1926 complaint, the license fee or tax paid under protest for that year, $2,975, with interest from June 26, 1926, on the second cause of action in the 1926 complaint, the fee or tax paid for

filing thirteen certificates of increase of capital stock during that year; and $1,130, with interest from December 10, 1927, on the sole cause of action in the 1927 complaint, the license fee or tax paid under protest for that year.

The facts are undisputed.

Reference to the statute shows that the maximum fee of $3,000 applies both to annual license and to filing fees, that all provisions of the acts apply equally to domestic and foreign corporations, and that the fees are fixed in proportion to the authorized capital stock.

Whether such fees can be lawfully exacted for the total authorized capital stock, though not entirely issued, is not at issue in these cases, for it is upon issued capital stock the license and filing fees were exacted from respondent.

[1] The attack upon the validity of the statutes presents Federal questions. We start with the presumption, indulged in by this and all other courts, that all laws duly enacted by the legislative power must be held to be constitutional and valid, unless clearly to the contrary.

We are as firmly bound to conform to the decisions of the United States supreme court upon such questions as any Federal or other court. The difficulty is in saying with confidence what that court has decided upon the questions here involved.

Certain principles have been ineradicably established.

[2] The power of Congress over interstate commerce is absolute. *Crutcher v. Kentucky,* 141 U. S. 47.

And the states have the power, subject to constitutional limitations, to regulate the doing of local business by foreign corporations within their borders. They have the absolute power to exclude; or to affix whatever terms and conditions they deem proper to

the right of a foreign corporation to come in and do business within their borders. *Horn Silver Min. Co. v. State,* 143 U. S. 305; *Postal Tel. Cable Co. v. Charleston,* 153 U. S. 692; *Hooper v. State of California,* 155 U. S. 648; *Allen v. Pullman's Palace Car Co.,* 191 U. S. 171; *National Council v. State Council,* 203 U. S. 151.

But the absolute power of the state, as last stated, does not include the right to exclude a foreign corporation from doing within the state interstate commerce, or directly burden such commerce, for in that field the states are impotent. *Western Union Tel. Co. v. Kansas,* 216 U. S. 1; *Pullman Co. v. State of Kansas ex rel. Coleman,* 216 U. S. 56; and *Ludwig v. Western Union Tel. Co.,* 216 U. S. 146.

An exception to the rule that a corporation may not do business in a state which did not create it, save by its consent, which it is free to withhold without reason, exists where a foreign corporation is a Federal instrumentality, or an instrument of, or engaged in, interstate or foreign commerce. *Hooper v. California, supra; Lamont, Corliss & Co. v. Hinkle,* 136 Wash. 285, 239 Pac. 840.

[3] When it comes to determining just what shall be considered an undue and direct burden on interstate commerce in local laws and regulations, the field is exceedingly wide and extremely conjectural. As was said by Mr. Justice Day in writing the decision in *Baltic Mining Co. v. Commonwealth of Massachusetts,* 231 U. S. 68:

"Every case involving the validity of a tax must be decided upon its own facts, and having no disposition to limit the authority of those cases the facts upon which they were decided must not be lost sight of in deciding other and alleged similar cases."

The last cited case is the subject of much discussion and controversy in the briefs herein and also in a

number of decisions by the United States supreme court.

It is insisted by the state here that it was never overruled, but was later merely distinguished and limited in its application by decisions of that court. We shall not cite all the cases from the United States supreme court bearing, in one way or another, upon the question decided in the *Baltic Mining Co.* case, *supra,* which involved a law of Massachusetts enacted in 1909, undertaking to impose an excise on foreign corporations qualifying for and doing business within that commonwealth, of one-fiftieth of one per cent of the par value of its authorized capital stock, but not to exceed in any one year the sum of two thousand dollars. While a number of things were stated *arguendo* in passing upon that case, the supreme court held that the tax was not unconstitutional, apparently because of its maximum provision which the supreme court of the commonwealth had held to be reasonable. That case was decided by the supreme court in 1913. The late Mr. Chief Justice White was then upon the court, as was also Mr. Justice Pitney, who, with Mr. Justice Van Devanter, dissented. That case distinguished two former cases in that court, namely: *Western Union Tel. Co. v. Kansas,* 216 U. S. 1, and *Southern R. Co. v. Greene,* 216 U. S. 400, upon the grounds that, in those cases, there had been no attempt to separate the intrastate business from the interstate business by the limitations of state lines in taxing the foreign companies for the privilege of doing local business, and in attempting to reach property, represented by capital stock of the companies invested in property in many states, and therefore beyond the jurisdiction of Kansas.

Later, in *General R. Signal Co. v. Commonwealth of Virginia,* 246 U. S. 500, in a case written by Mr. Justice McReynolds, concurred in by all the court, while Jus-

tices Day and Pitney were still members of the court, a foreign corporation seeking to do business in Virginia was taxed as such, before it could obtain a certificate of authority to do business in that state, upon its authorized capitalization, a fee of $1,000. The law in that case imposed a tax of a certain sum upon graduated amounts of capitalization. The opinion stated:

"Inspection of the statute shows that prescribed fees do not vary in direct proportion to capital stock and that a maximum is fixed. In the class to which plaintiff in error belongs the amount specified is one thousand dollars and under all the circumstances, we cannot say this is wholly arbitrary or unreasonable.

"Considering what we said in *Baltic Mining Co. v. Massachusetts*, 231 U. S. 68; *St. Louis Southwestern Ry. Co. v. Arkansas*, 235 U. S. 350; *Kansas City, Fort Scott & Memphis Ry. Co. v. Kansas*, 240 U. S. 227; *Kansas City, Memphis & Birmingham R. R. Co. v. Stiles*, 242 U. S. 111, the two characteristics of the statute just referred to must be regarded as sufficient to save its validity. It seems proper, however, to add that the case is on the border line. See *Looney v. Crane Co.*, 245 U. S. 178; *International Paper Co. v. Massachusetts, ante*, 135, and *Locomobile Co. v. Massachusetts, ante*, 146."

In the sixth case cited by the author of that opinion, a decision written by Mr. Justice Van Devanter, who had dissented in the *Baltic Mining Co.* case, *supra*, the law of Massachusetts involved in that case had been amended, in 1914, so that the maximum provided in it had been abolished. After that date, the tax had been assessed on the par value of the entire authorized capital at one-fiftieth of one per cent up to $10,000,000 and one one-hundredth for the excess.

In that case (*International Paper Co. v. Commonwealth of Massachusetts*, 246 U. S. 135) the court held that the new system of excise in Massachusetts was unconstitutional and void as to that foreign corpora-

tion seeking to qualify to do business in Massachusetts and laid down these rules as having been announced in the cases decided in 216 U. S. heretofore cited:

"(1)  The power of a State to regulate the transaction of a local business within its borders by a foreign corporation,—meaning a corporation of a sister State, —is not unrestricted or absolute, but must be exerted in subordination to the limitations which the Constitution places on state action.

"(2)  Under the commerce clause exclusive power to regulate interstate commerce rests in Congress, and a state statute which either directly or by its necessary operation burdens such commerce is invalid, regardless of the purpose with which it was enacted.

"(3)  Consistently with the due process clause, a State cannot tax property belonging to a foreign corporation and neither located nor used within the confines of the State.

"(4)  That a foreign corporation is partly, or even chiefly, engaged in interstate commerce does not prevent a State in which it has property and is doing a local business from taxing that property and imposing a license fee or excise in respect of that business, but the State cannot require the corporation as a condition of the right to do a local business therein to submit to a tax on its interstate business or on its property outside the State.

"(5)  A license fee or excise of a given per cent of the entire authorized capital of a foreign corporation doing both a local and interstate business in several states, although declared by the State imposing it to be merely a charge for the privilege of conducting a local business therein, is essentially and for every practical purpose a tax on the entire business of the corporation, including that which is interstate, and on its entire property, including that in other States; and this because the capital stock of the corporation represents all its business of every class and all its property wherever located.

"(6)  When tested, as it must be, by its substance— its essential and practical operation—rather than its

form of local characterization, such a license fee or excise is unconstitutional and void as illegally burdening interstate commerce and also as wanting in due process because laying a tax on property beyond the jurisdiction of the State.''

The court then continued:

''True, those were cases where the business, interstate and local, in which the foreign corporation was engaged was that of a common carrier. But the immunity of interstate commerce from state taxation is not confined to what is done by the carriers in such commerce. On the contrary, it is universal and covers every class of interstate commerce, including that conducted by merchants and trading companies. And as respects the power of a State to tax property beyond its jurisdiction belonging to a foreign corporation, it is of no moment whether the corporation be a carrier or a trading company, for a State is wholly without power to impose such a tax.

''Our last decision on the subject was given during the present term in *Looney v. Crane Company,* 245 U. S. 178.''

In view of what was announced as settled rules in the last quoted case in paragraph 4, 5 and 6, the decision in the *General R. Signal Co.* case, *supra,* can only be accounted for upon the theory that the tax laid upon foreign corporations by Virginia to qualify to do business therein was not unreasonable, came within the decision in the *Baltic Mining Co.* case, *supra,* and its companion case, and was saved for that reason. The other case in the same volume, *Locomobile Co. of America v. Commonwealth of Massachusetts,* 246 U. S. 146, referred to in the *General R. Signal Co.* case, was written by Mr. Justice Van Devanter, involved the same law of 1914 in Massachusetts removing the maximum limit prescribed in the 1909 law, and the court said:

"It [the corporation] does both an interstate and a local business in Massachusetts. Each is of considerable volume, but the interstate is much the larger, although this is not material. The tax is of a designated per cent of the entire authorized capital, and was imposed after the maximum limit named in St. 1909, c. 490, Part III, § 56, was removed. . . . As thus changed the statute is in its essence and practical operation indistinguishable from those adjudged invalid in *Western Union Telegraph Co. v. Kansas,* 216 U. S. 1;"

citing the other cases of 216 U. S., *Looney v. Crane Co.,* 245 U. S. 178, and the *International Paper Co. v. Commonwealth of Massachusetts,* 246 U. S. 135.

Still later, after several intervening cases had been decided by that court, the United States supreme court in *Alpha Portland Cement Co. v. Commonwealth of Massachusetts,* 268 U. S. 203, in a case written by Mr. Justice McReynolds, held an excise law of Massachusetts void as to the foreign corporation suing because repugnant to the commerce clause and to the Fourteenth Amendment to the Federal constitution, although the supreme court of Massachusetts in that case, reported in 244 Mass. 530, 139 N. E. 158 and 248 Mass. 156, 142 N. E. 762, had held the law valid as against such objections.

The author of the opinion stated the question thus:

"May a State impose upon a foreign corporation which transacts only interstate business within her borders an excise tax measured by a combination of two factors—the proportion of the total value of capital shares attributed to transactions therein, and the proportion of net income attributed to such transaction?

"*Cheney Brothers Co. v. Massachusetts,* 246 U. S. 147, necessitates a negative reply."

Some quotations were made from that case. Other cases were cited, including *International Paper Co. v.*

*Commonwealth of Massachusetts, supra,* and the court then said:.

"It must now be regarded as settled that a State may not burden interstate commerce or tax property beyond her borders under the guise of regulating or taxing intrastate business. So to burden interstate commerce is prohibited by the Commerce Clause; and the Fourteenth Amendment does not permit taxation of property beyond the State's jurisdiction. The amount demanded is unimportant when there is no legitimate basis for the tax. So far as the language of *Baltic Mining Co. v. Massachusetts,* 231 U. S. 68, tends to support a different view it conflicts with conclusions reached in later opinions and is now definitely disapproved."

Just to what extent it was intended to disapprove the decision and language of the *Baltic Mining Co.* case, *supra,* is hard to determine.

It was pointed out in *Alpha Portland Cement Co. v. Commonwealth of Massachusetts,* 246 U. S. 135, that the plaintiff in error did no local business and there was no proper foundation for the excise.

In the cases at bar, it will be noted that the law fixing annual license fees makes no attempt to segregate the local business done by a foreign corporation from its business done in other states. While respondent has a large amount of local business in this state, it also has a much vaster amount of business outside of this state than in it. There may be some distinction between such imposition of annual license fees charged to both foreign and domestic corporations and the imposition of filing fees for articles of incorporations and certificates of increase under Rem. Comp. Stat., §§ 3836 and 3837 [P. C. §§ 4641, 4642], as amended by Laws of 1925, Ex. Sess., pp. 417, 418, *supra.* But on the other hand, respondent as a common carrier, so defined by several statutes in this state, cannot with-

draw therefrom and cannot do, as was suggested in *State v. Northern Express Co.,* 80 Wash. 309, 141 Pac. 757, renounce its intrastate business and cease to do business within this state.

The same possibilities were suggested as possible in the *Lamont, Corliss & Co.* case, *supra,* by this court, and in *State ex rel. Barber Co. v. Hinkle,* 138 Wash. 72, 244 Pac. 398.

Neither of the last cited cases from this court involve charges pertaining to, or likely to burden, interstate commerce and conflict with the commerce clause of the Federal constitution and the due process clause, as was carefully pointed out in each of them. The law in question, in the cases at bar, was sustained as to foreign corporations generally as applying equally to such corporations and to domestic corporations and not violating any constitutional provisions as to the corporations there complaining. These cases are not in point here.

In a recent case of a somewhat similar character, involving the payment of filing fees by a foreign corporation before it could be qualified to do business, a corporation engaged in interstate commerce, but not a public carrier, was decided by a Federal district court special statutory bench of three judges for the Western District of Washington. *Cudahy Packing Co. v. Hinkle,* 24 Fed. (2d) 124. That was a suit by the Cudahy Packing Co. against the secretary of state to enjoin the enforcement of the statutes involved here requiring of corporations the payment of filing fees and annual license fees. In that case, before Dietrich, circuit judge, and Bourquin and Cushman, district judges, in a learned and lengthy opinion for the majority, by Cushman, J., reviewing the authorities discussed in this opinion, and many more by the supreme

court of the United States, the majority concluded that the *Baltic Mining Co.* case, *supra,* had not been entirely overruled, but was in effect, so far as the decision in that case would apply to a case like that before them. A prevailing consideration with the majority in that case was the fact that a limitation of $3,000 is prescribed by our statutes, which was not so in the case of the *Alpha Portland Cement Co., supra,* or in several other cases later than the *Baltic Mining Co.* case, *supra,* referred to and reviewed in Judge Cushman's opinion. Bourquin, judge, dissented from the views of the majority in that case and Dietrich, circuit judge, concurred specially with Judge Cushman in holding the law valid as applied to such cases as that before them. We refer to the opinions themselves for the discussions and citations therein.

It will be noted that that case was not a case involving a public carrier required to do business in this state and unable to withdraw therefrom. It was more free to withdraw than was Northern Express Company in the case cited in 80 Wash. 309, 141 Pac. 757, and perhaps as free to withdraw as the two complaining parties in 136 Wash. 285, 239 Pac. 840 and 138 Wash. 72, 244 Pac. 398, cases heretofore cited.

So that the decision in the *Cuhahy* case is not of very great assistance here, except in so far as the majority deduced that the *Baltic Mining Co.* case, *supra* has not been entirely overruled. All of the judges seem to concur in the conclusion that the excises imposed under our statutes are not unreasonable. We also concur in that.

We are firmly convinced, however, and we are bound by our convictions to so decide, that under the more recent cases of the supreme court of the United States, particularly that largely quoted from, *International Paper Co. v. Commonwealth of Massachusetts,*

*supra,* the operation of the ɛ*ːatutes in question here, under the commerce clause of the Federal constitution, necessarily burdens such interstate commerce, because (1) of the legal condition that respondent is a public carrier largely engaged in business in this state and not free to withdraw therefrom; (2) under such conditions the state by the exaction of these fees is compelling such foreign corporation, as a condition of its right to do a local business in this state, to submit to a burden on its interstate business; and, (3) that the statutes violate the due process clause of the Fourteenth Amendment to the Federal constitution because of imposing a tax on property beyond the jurisdiction of the state.

Since the *Alpha Cement Co.* case was decided by the United States supreme court in 268 U. S. 203, several state courts, having similar statutes to those involved in these cases, have passed upon them, invariably holding against their validity. See, also, *Perkins Mfg. Co. v. Jordan,* 200 Cal. 667, 254 Pac. 551; *Case Thresh. Mach. Co. v. Stewart,* 60 Mont. 380, 199 Pac. 909; *General Electric Co. v. Stewart,* 60 Mont. 387, 199 Pac. 911; *Minneapolis Steel & Machinery Co. v. Crockett,* 263 Pac. (Utah) 926. These we have examined. The Montana statute appears to have no maximum limit prescribed as does ours. The California and Utah statutes have lower maximums than ours and California a higher rate of graduation upon the capitalization.

The California court seems to take it for granted that the decision in the *Baltic Mining Co.* case, *supra,* has been thoroughly and completely overruled. In that respect, we do not care to follow it. In other respects, the decision seems to be sound.

After thoroughly considering and analyzing all the cases brought to our attention, we are satisfied that our laws are invalid as to respondent as contravening

the commerce clause and the Fourteenth Amendment, to the Federal constitution.

The judgments are therefore affirmed.

MAIN, MITCHELL, FRENCH, ASKREN, and PARKER, JJ., concur.

FULLERTON, C. J., and TOLMAN, J., dissent.