[No. 21714.   Department One.   June 13, 1929.]

LUCKENBACH STEAMSHIP COMPANY, INCORPORATED, *Respondent*, v. JOHN C. DENNEY, *as Director of the Department of Public Works et al., Appellants.*[1]

*The Attorney General* and *H. C. Brodie, Assistant,* for appellants.

*John S. Robinson,* for respondent.

HOLCOMB, J.—This is a suit to enjoin the department of public works from enforcing against respondent the

[1]Reported in 278 Pac. 419.

provisions of the state law regulating wharfingers and warehousemen.

In its complaint, respondent alleged its organization as a Delaware corporation engaged in intercoastal and interstate commerce, carrying freight between the Pacific coast and the Atlantic and Gulf coasts. It has leased, and for some years has operated, a pier in Seattle known as Pier I, for the purpose of discharging and receiving freight from its vessels. No vessels, other than its own, berth at or use that dock. No freight was handled over the dock except such as was brought into this state from some other state by one of respondent's vessels, or such as was brought to the dock to be carried out of this state to some other state by one of its vessels. It maintained and operated the dock solely as an instrument of interstate commerce, and in no way held itself out as a public wharfinger, nor does it perform wharfage service as a separate or independent service, nor perform any wharfage service nor collect any wharfage charge except pursuant to interstate contracts for carriage. It alleged the demand of the department of public works that it file an annual report, and that the furnishing of such report would put respondent to great trouble and expense, and that the fee required to be paid under the state law would be derived from receipts on interstate commerce, which the department has no right to regulate; that respondent is engaged exclusively in interstate commerce, and not liable to regulation by the department of public works in any way.

Appellants filed an amended answer in which all the material allegations of the complaint were denied, and in which it was alleged, as a separate defense, that the department of public works was attempting to exercise no jurisdiction over the interstate commerce common carrier operations of respondent; that respondent is a

wharfinger under the state statutes; that the services rendered by respondent by the operation of its dock are local in nature, and its wharfage charges are separately assessed and collected, and are not included in its charges for interstate carriage, and that, by reason of such segregation, its wharfage charges could easily be segregated and ascertained at little expense; that the fees required to be paid are placed in a special fund known as the public service revolving fund, and used exclusively for paying the expenses of supervision and regulation.

It was further alleged that Pier I, operated by respondent, is leased from the Northern Pacific Railway Company; that approximately 300 feet of such pier is located within the Seattle harbor area, and that the state has reserved the right to regulate wharfage on the portion so located.

Respondent replied, denying all the material portions of the affirmative amended answer. It admitted the location of a portion of the pier within the leased harbor area, and its operation under lease in which there was reserved the right of the state to regulate wharfage rates.

The evidence sustains the allegations of the complaint. There is no dispute as to the facts. Respondent conducts no transportation between points within this state. In connection with its transportation business, its vessels land at Pier I in Seattle, and discharge freight from the East and Gulf coasts and receive freight which has been delivered at that dock for carriage for Gulf or East points. It makes a charge to the public for handling the freight over this Seattle dock, which charges are shown in a regularly published tariff. When goods are shipped from the East or Gulf coasts to Seattle, bills of lading and expense bills are issued covering such shipments, and a space provided

thereon for listing wharfage charges in Seattle. Such charges are separately set forth on such bills and collected from the shipper or consignee. When goods are delivered at the Seattle pier for transportation on respondent's steamers, bills of lading and expense bills are issued covering such outbound shipments, which documents likewise show in a separate space provided thereon the wharfage charges in Seattle on the shipments, which charges are collected from the shipper or consignee.

No steamship line, other than the ships of respondent, use the pier of respondent, but, from time to time, freight is brought to Seattle by vessels belonging to respondent, unloaded on its dock, which is to be reshipped by steamer to other points in Washington, Alaska, or elsewhere, and the steamer company by which such goods are consigned from Seattle sends its steamer to the pier of respondent to pick up such freight. Goods received from other steamship lines to be shipped out of Seattle upon respondent's vessels are also unloaded at this dock. The public generally, upon having occasion to ship goods from Seattle by steamers of respondent, or to receive goods at Seattle from its steamers, call at its pier and deliver or receive freight.

This pier is approximately 850 feet long. The outer 310 feet extend into the Seattle harbor area. The remaining portion of the dock is privately owned by the Northern Pacific Railway Company. The outer 310 feet, being within the Seattle harbor area and reserved by the provisions of Art. XV of the state constitution, subject only to lease, has, from time to time, been leased to the Northern Pacific Railway Company, which, at the time of the trial of this case, had its application pending for its preferred re-lease.

In 1922, respondent filed a tariff with the department of public works, but, subsequently, after conference between its representatives and representatives of the department, it was agreed that respondent's operations were exclusively interstate, and not subject to the jurisdiction of the department. Although the tariff was never withdrawn, respondent thereafter made no attempt to comply with the public service law, nor did the department attempt to enforce the law against it. When the demand was made by the present director, as a duty required under the public service commission law of 1911 in so far as it relates to wharfingers, this action ensued.

The trial court, after trial below, concluded that the operations of respondent were exclusively interstate in character, and a formal decree was entered, permanently restraining appellants from attempting to obtain any annual report or filing fee covering respondent's wharfage operations, or attempting to enforce any penalties for noncompliance with the public service commission law. This appeal results.

The case involves the right of the state department to require the filing of an annual report, the payment of statutory fees in connection therewith, and the furnishing of statistical data required by the public service commission law of 1911 (Laws of 1911, ch. 117, p. 538; Rem. Comp. Stat., § 10339) covering the operations of the pier in Seattle.

If the state has power to regulate the wharfage rates, it undoubtedly possesses the concomitant power to require the filing of annual reports and the payment of regulatory fees. If the state does not possess such regulatory power, it has no right to require the filing of the annual reports or the payment of fees.

The claims of error of appellants are summarized and argued under four general heads:

(1) That the state has lawfully reserved by constitutional and statutory provisions the right to regulate respondent's wharfage charges on structures erected within leased harbor areas;

(2) That respondent, by the acceptance of its lease from the Northern Pacific Railway Company, under the constitutional and statutory provisions in force and the express reservation in the lease from the state to the Northern Pacific Railway Company, is estopped from denying the right of the state to regulate its wharfage operations within the leased harbor area;

(3) That the operations of the wharf are local in character and subject to state regulation, regardless of the fact that such wharf may be used as an instrumentality in connection with interstate commerce;

(4) That the respondent so operates Pier I in Seattle as to come within the statutory definition of a wharfinger.

Appellants first quote Art. XV, §§ 1 and 2, of the state constitution, whereby the state retained and reserved all rights in and to the navigable waters of all harbors, etc., within or in front of the corporate limits of any city, or within one mile on either side thereof. Further provision was made that the state should never give, sell or lease to any private person, etc., any rights whatever in the waters beyond such harbor lines, nor should any of the area lying between any harbor line and the line of ordinary high tide, and within not less than fifty feet, nor more than six hundred feet, of such harbor line, as the commission should determine, be sold or granted by the state, nor its rights to control the same relinquished, but such area should be forever reserved for landings, wharves, streets, and other conveniences of navigation and commerce.

Section 2 directs that the legislature shall, by general laws, provide for the leasing of the right to build and maintain wharves, docks and other structures, upon the areas mentioned in section one, but no lease to be made for any term longer than thirty years; or the legislature may provide by general laws for the building and maintaining upon such area, wharves, docks, and other structures.

In pursuance of the constitutional mandate, the legislature, in 1895, enacted general legislation to carry out the constitutional directions. Laws of 1895, ch. 178, p. 563, § 84 [Rem. Comp. Stat., § 7999]. See, also, Laws of 1927, ch. 206, p. 540, § 132 (Rem. 1927 Sup., § 7797-132).

The lease to the Northern Pacific Railway Company, which was assigned to respondent, contains a clause substantially in the language of the constitution and the statutes. It reads:

"The state of Washington reserves the right to regulate either by rules established by the harbor line commission or by legislative enactment or by both methods, the rates of wharfage, dockage, or other tolls to be imposed by the lessee upon commerce for any of the purposes for which said leased area may be used, and the right to prevent extortion, discrimination and exclusive privileges."

It is insisted by appellants, in view of the constitutional and statutory enactments and the provisions of the lease under which respondent holds its tenure, that neither its grantor, nor it, can repudiate some of the conditions of the lease, while depending upon others for its tenure.

Cases are cited by appellants defining the nature of the jurisdiction of the state over navigable waters within its borders and the lands under such navigable waters, to the effect that such waters and lands thereunder are held in trust by the state for public pur-

poses of navigation; that title being in the state, such lands and waters are subject to state regulation and control, under the restriction, however, of not interfering with regulations which Congress may make with regard to public navigation and commerce; citing *Hardin v. Jordan,* 140 U. S. 371; *Illinois Central Railroad v. Illinois,* 146 U. S. 387; *Shively v. Bowlby,* 152 U. S. 1; *Mann v. Tacoma Land Co.,* 153 U. S. 273 (Washington case); *Long Sault Development Co. v. Call,* 242 U. S. 272; *Port of Seattle v. Oregon-Washington R. Co.,* 255 U. S. 56 (Washington case).

In the last cited case, which is one of the latest expressions by the United States supreme court and involves waters and the land under them in front of Seattle, the ownership of the state was defined as follows:

"The navigable waters in Washington, and the lands under them, passed to the state, upon its creation, in full proprietary ownership, subject to the Federal control over navigation."

In another case cited by appellants, *United States v. Holt State Bank,* 270 U. S. 49, it was also said that:

"It is settled law in this country that lands underlying navigable waters within a state belong to the state in its sovereign capacity and may be used and disposed of as it may elect, subject to the paramount power of Congress to control such waters for the purposes of navigation in commerce among the states and with foreign nations, . . ."

The very cases cited by appellants, defining the title and jurisdiction of the state in and to such waters, emphasize the fact that the title and jurisdiction of the state is

". . . subject to the paramount power of Congress to control such waters for the purposes of navigation in commerce among the states and with foreign nations."

It is plain, therefore, that, by the decisions of the United States supreme court, the sovereign right of the state in and to the waters in question is subject to the paramount power of the Federal government to regulate navigation and commerce between the states and foreign countries.

The constitution, statutes, and lease relied upon, manifestly make no difference in this respect. The question still remains as to the power of the state to regulate or burden interstate commerce. It is conclusive that respondent is engaged only in interstate commerce within this state. While its Pier I is not a private wharf used only by respondent for itself *(Barrington v. Commercial Dock Co.,* 15 Wash. 170, 45 Pac. 748; *Transportation Co. v. Parkersburg,* 107 U. S. 691; *The M. L. C. No. 10,* 10 Fed. (2d) 699), and performs such public services as constitutes it in a way a public dock *(Barrington v. Commercial Dock Co., supra)* and therefore subject to regulation by public authority, that does not dispose of this question.

It is also clear that respondent's pier is used only in its own interstate commerce carrying business. It is used as a facility in interstate commerce. The rates and charges it makes for its wharfage are rates and charges affecting only interstate commerce. The contracts it makes for such wharfage rates are contracts exclusively affecting carriage in interstate commerce.

Such being the case, it has so long been settled in this state and by the Federal supreme court that the power of Congress over interstate commerce is absolute, and that the state cannot place any undue or direct burden thereon, and cannot place restrictions upon the right of foreign corporations to do business in the state, that only a few of the most recent cases need be cited. *Great Northern Railway Co. v. State,* 147 Wash. 630, 267 Pac. 506; *Cudahy Packing Co. v.*

*Hinkle,* U. S. Adv. Ops., 1928-29, p. 269, 73 L. Ed. 269 (Washington case). See, also, *State v. Northern Express Co.,* 80 Wash. 309, 141 Pac. 757.

While these cases were upon other features of taxation and interference with interstate commerce, by referring to the last United States case, it will be observed that that court emphasizes previous expressions in certain cases cited and among other things quoted from a case, saying:

"It must now be regarded as settled that a state may not burden interstate commerce or tax property beyond her borders under the guise of regulating or taxing intrastate business. So to burden interstate commerce is prohibited by the commerce clause; and the 14th Amendment does not permit taxation of property beyond the state's jurisdiction. The amount demanded is unimportant when there is no legitimate basis for the tax."

It is fundamental that the authority to regulate and control interstate commerce cannot be divided and that the authority of the United States is absolute. *Western Union Tel. Co. v. Kansas,* 216 U. S. 1; *Pullman Co. v. Kansas,* 216 U. S. 56; *Ludwig v. Western Union Tel. Co.,* 216 U. S. 146.

That court has also said that a corporation of one state may go into another without obtaining the leave or license of the latter for all the legitimate purposes of such commerce, and any state statute obstructing or burdening the exercise of this privilege is void under the commerce clause. *Dahnke-Walker Co. v. Bondurant,* 257 U. S. 282.

In the last cited case the court also said:

"Such commerce is not confined to transportation from one state to another, but comprehends all commercial intercourse between different states and all the component parts of that intercourse."

Under the conditions existing in this case, one of the "component parts" of the interstate commerce conducted by respondent is handling goods upon its own dock when carried in interstate commerce.

The cases cited by appellants, respecting wharfingers of independent nature as being subject to local control, do not fit this case.

Typical cases are those of *Packet Co. v. Catlettsburg*, 105 U. S. 559, and *Transportation Co. v. Parkersburg*, 107 U. S. 691. Those cases dealt with claims of interstate carriers that they had the right to land at public wharves without paying wharfage charges therefor. They based their claims upon the ground that such charges constituted burdens on interstate commerce. The court held in all of the cases that the charges were in no sense taxes or duties, but merely charges for local services, and, being such, constituted only reasonable local regulation. The cases would be in point if this respondent had instituted an action asserting its right to use the port commission docks of Seattle free of charge, on the ground that any charge made to it by such public dock constituted a burden on interstate commerce.

We are satisfied that the trial judge was right in holding that the attempted regulation here complained of would be a direct burden upon interstate commerce, and cannot be sustained under the decisions of the United States supreme court, by which such cases are governed.

Respondent also cites us to the Shipping Board Act of Congress of 1916, U. S. C. A., Title 46, §§ 817-820.

By § 804, *ibid,* the United States shipping board was created. By § 817, *supra,* every common carrier by water in interstate commerce is required to establish, observe, and enforce just and reasonable rates, fares, charges, classifications, and tariffs, and just and rea-

sonable regulations and practices relating thereto; and to file with the shipping board and keep open to public inspection, in the form and manner and within the time prescribed by the board, the maximum rates, fares, and charges for or in connection with transportation between points on its own route. By the same section, the shipping board was given power, when it finds any rate, fare, charge, classification, tariff, regulation, or practice to be unjust or unreasonable, to prescribe, and, by order, enforce, a just and reasonable maximum rate, fare, charge, classification, tariff, regulation or practice.

Section 820, *supra,* provides for the compulsion of filing reports and accounts with that board, and penalties for violation of the provisions of that section.

It is thus manifest that, if the Federal interstate commerce regulations do not apply to respondent as a wharfinger, the shipping board legislation does. The field is therefore entirely occupied by Federal legislation and regulations. In such case, it is well settled that the state is deprived of any authority to regulate such utilities. *Chicago, Rock Island & Pacific R. Co. v. Hardwick Farmers Elevator Co.,* 226 U. S. 426.

We have no doubt but that the judgment is right, and must be affirmed.

Affirmed.

MITCHELL, C. J., TOLMAN, and BEALS, JJ., concur.